The BOARD OF ELECTIONS for the District of Columbia, Charles B. Fisher, Chairman, et al., Appellants,

v.

DEMOCRATIC CENTRAL COMMITTEE for the District of Columbia et al., Appellees.

No. 6577.

District of Columbia Court of Appeals.

Argued Oct. 24, 1972.

Decided Feb. 27, 1973.

J. E. Bindeman, Sp. Counsel to the District of Columbia Board of Elections, with whom C. Francis Murphy, Corp. Counsel, Richard W. Barton and Earl A. Gershenow, Asst. Corp. Counsels, were on the brief, for appellants.

John W. Karr, Washington, D.C., with whom Glenn R. Graves, Washington, D.C., was on the brief, for appellees.

Before PAIR, YEAGLEY and HARRIS, Associate Judges.

YEAGLEY, Associate Judge:

Appellees, the Democratic Central Committee for the District of Columbia and its Chairman, Bruce J. Terris, brought this action to obtain injunctive relief from alleged "unlawful, unreasonable, arbitrary and capricious"[1] actions of the Board of Elections. They alleged that the Board was not complying with the statutory mandate of Congress with regard to the certification of nominees for election to public office, and that it was certifying nominees for the ballot without fully satisfying itself as to the lawfulness of the signatures on the nominating petitions. Appellees asked that the court enjoin appellants from certifying any nominee to the ballot in future elections unless it has first been determined that the petitions in support of a particular nominee were subscribed by the requisite number of qualified electors and further that the Board be ordered to entertain challenges to nominating petitions utilizing a mathematical technique of random sampling.

Appellants moved to dismiss the complaint on the ground that it failed to state a claim upon which relief could be granted. The trial court denied that motion and issued a permanent injunction prohibiting the Board from certifying any further candidates to the ballot until it submitted to the trial court, for its approval, a reasonable method of certification that would include some system for checking the authenticity of the signatures on nominating petitions.[2]

Since we find that appellees have not met the requirement of standing to bring their action, we reverse the judgment below.

Recently this court adopted in Basiliko v. District of Columbia, D.C.App., 283 A.2d 816, 818 (1971), the test set forth in Ballerina Pen Co. v. Kunzig, 140 U.S.App.D.C. 98, 433 F.2d 1204 (1970), as to whether a party has standing to challenge the action or inaction of an agency. In the latter case the court said:

First, the party must allege that the challenged action has caused him injury in fact, in order to satisfy the Article III requirement that he possess "the personal stake and interest that impart the concrete adverseness" necessary to the existence of a case or controversy. . . . The plaintiff must further allege that the agency has acted arbitrarily, capriciously, or in excess of its statutory authority, so as to injure an interest that "is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." . . . Finally, there must be no "clear and convincing" indication of a legislative intent to withhold judicial review. [Citations and footnotes omitted.] [140 U.S.App.D.C. at 101, 433 F.2d at 1207.]

■ Appellees here have failed to meet the first prong of the three-pronged test in that they have not alleged an injury in fact to themselves. The Democratic Central Committee made no allegation that it was authorized to sue in behalf of its members who are qualified electors, or that its members were injured in fact and that it brought the action in their behalf. Nor was it alleged that appellee Terris was injured or that he sued as one who was a qualified elector at the time the complaint was filed. The only allegation regarding his status is in paragraph 7 of the Complaint where it is alleged "[a]gain in 1971 the plaintiff Terris, acting in his capacity as Committee chairman, renewed plaintiffs' request . . . ."[3] Although the issue

---

1. Paragraph 11 of Complaint dated March 31, 1972.

2. While the exercising of continuing supervision over an executive agency causes us considerable difficulty, we do not reach the question of its appropriateness in view of our holding herein.

3. We recognize, however, that one must be a qualified elector in the District of Columbia in order to be eligible for the

of standing was not argued below, it was raised necessarily by appellants' motion to dismiss the complaint.

■ We note that the motion for a preliminary injunction alleges that "immediate and irreparable injury and damage will result to plaintiffs . . . in that the experience of prior elections has demonstrated that unlawful nominating petitions containing the signatures of unregistered electors or forged signatures of registered electors have been certified by the Board . . . ." The intentional use of invalid signatures on a nominating petition may constitute a fraud on the entire democratic process and warrants the strongest possible condemnation. On the other hand, the presence of some invalid signatures does not necessarily make a petition deficient, and there is no allegation that the petitions involved here did not contain the required number of valid signatures to make them acceptable.

The thrust of the complaint is that the Board continues to refuse to check the validity of signatures on nominating petitions in the manner desired by appellees. What appellees are really claiming is that there is an injury to the public at large from the Board of Elections' refusal to check nominating petitions in the manner plaintiffs suggested.

"But the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." [4]

[A] mere "interest in a problem," no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organiza-

tion "adversely affected" or "aggrieved" within the meaning of the APA. . . . [5]

Presumably under certain conditions one suing as an elector could state facts showing an injury in fact, and if unlawful nominating petitions are accepted a real injury could be shown by other candidates on the ballot. Nowhere in the complaint or briefs do appellees claim they represented particular candidates whose injuries they are suing to rectify. Nor do they state they are suing as electors or that they sue as representatives of electors. We must conclude that appellees are suing in their official capacities as the Democratic Central Committee and its Chairman.

We are mindful that the Supreme Court has liberalized standing requirements to the point of allowing certain suits to protect the public interest.[6] Such issues may be raised by a representative of the public interest, but that representative must allege his personal stake in the controversy—his own injury in fact—before he will have standing to put forth the broader claims of the public at large.[7] The appellees have failed to satisfy that requirement.

■ Recognizing that the technical nature of our resolution of the issue posed by the first part of the three-part test for standing is such that the problem might be surmounted in a new complaint, we consider it appropriate to observe further that appellees have failed also to establish that they come within part three of the three-part test for standing set forth in Ballerina Pen Co. v. Kunzing, quoted *supra, i. e.,* there must be no clear and convincing indication of a legislative intent to withhold judicial review. It is clear that the Congress has provided a specific procedure to be fol-

position of Chairman of the Central Committee. D.C.Code 1967, § 1–1108(a) (2) and (b) (Supp. V, 1972).

4. Sierra Club v. Morton, 405 U.S. 727, 734–735, 92 S.Ct. 1361, 1368, 31 L.Ed. 2d 636 (1972).

5. *Id.* at 739, 92 S.Ct. at 1368.

6. Scripps-Howard Radio v. FCC, 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942); FCC v. Sanders Bros. Radio Station, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940).

7. Sierra Club v. Morton, *supra* note 4.

lowed in determining the validity of nominating petitions and, of more importance, a specific procedure to be followed for the judicial review of Board decisions regarding challenges to such petitions. In the context of the three-part test for standing, the existence of such clear statutory provisions rules out the procedure pursued in this case.[8]

■ Appellees argued below, and the Superior Court agreed, that the statutory provisions regarding the Board's duties of certification of nominating petitions required the Board to establish some method for sua sponte determining the validity of the petitions, or more specifically, the authenticity of the signatures thereon prior to certification to the ballot. We do not agree. The relevant statute, D.C.Code 1967, § 1–1108(p)(1) (Supp. V, 1972) provides that:

> The Board is authorized to accept any nominating petition for a candidate for any office as bona fide with respect to the qualifications of the signatories thereto if the original or facsimile thereof has been posted in a suitable public place for the ten-day period beginning on the forty-second day before the date of the election for such office. Any qualified elector may within such ten-day period challenge the validity of any petition by a written statement duly signed by the challenger and filed with the Board and specifying concisely the alleged defects in such petition. Copy of such challenge shall be sent by the Board promptly to the person designated for the purpose in the nominating petition.

The foregoing provisions of the statute set forth both the duty of the Board with respect to certification and the proper procedure to be utilized by an elector to challenge the validity of the petition. The statute specifically authorizes the Board to accept a nominating petition if it has been properly filed and posted for a ten-day period. The statute is clear on its face and, even though appellees are convinced the statutory scheme is inadequate, this court will not attempt to judicially legislate a meaning different than that contemplated by Congress. If a different procedure is desired it is a matter for the legislature and we will not interfere with its clear and unambiguous mandate.

The real significance of this legislation to the case before us is that the ensuing paragraph, section 1–1108(p)(2), provides for a hearing before the Board on such challenges to nominating petitions, for a timely decision by the Board, and that the right of appeal shall be directly from the Board to this court. It is not only clear that the Congress has expressed its intent as to how such matters shall be handled by the Board, but also what the method of appeal shall be. Accordingly, we cannot hold that the procedure appellees have invoked here was intended by Congress to be available in this situation. Appellees therefore have not met the third part of the aforementioned test for standing.

Appellant aptly notes that appellee Terris appeared before the Senate Committee on the District of Columbia in an effort to obtain an amendment to the District of Columbia Election Act that would provide the same relief that he seeks here, i. e., to require the Board, on its own motion, to investigate nominating petitions with respect to the qualifications of the signatories thereto. The Congress did not include his proposal, however, in the ensuing amendment to that Act.[9]

For the foregoing reasons the judgment of the trial court is reversed with instructions to dismiss the complaint for lack of jurisdiction over the subject matter.

Reversed.

---

8. D.C.Code 1967, § 1–1108(p)(1) and (p)(2) (Supp. V, 1972).

9. Pub.L. No. 92–220, 85 Stat. 788 (Dec. 23, 1971) amending D.C.Code 1967, § 1–1101 et seq.