In the Matter of LEONARD S. ZARTMAN et al., Appellants, v RICHARD REISEM et al., Constituting the City Preservation Board of the City of Rochester, et al., Respondents.

Fourth Department, November 4, 1977

*Nixon, Hargrave, Devans & Doyle (John B. Hood* and *Gregory J. Murrer* of counsel), for appellants.

*Louis N. Kash, Corporation Counsel (Chad R. Hayden* of counsel), for respondents.

SIMONS, J. The broad issue presented in this appeal is whether the respondents, members of the Rochester Preservation Board and other city officials, improperly granted a certificate of appropriateness to Dr. G. H. Jackson and his wife to build a tennis court in their backyard.

Petitioners, Leonard and Barbara Zartman, are the owners of residential property known as 60 Hawthorne Street in Rochester. Immediately south of their property is the residence of Dr. Jackson and his family, known as 50 Hawthorne Street. Both properties are located in a one-family residential zone in which private tennis courts are a permitted use under the provisions of the Rochester zoning ordinances. The properties are also within an area designated by the Rochester City Council as the East Avenue Preservation District, a neighborhood of fine old homes, many designated as landmarks under the provisions of Rochester Preservation Ordinance because of their distinctive architectural features or historic value. Neither the Zartman nor Jackson property is designated a landmark, but the Ryder property, immediately north of Zartmans and fronting on East Avenue, has been designated a landmark.

The Jackson property is 100 feet wide in front and back and 384.57 feet deep. The existing improvements in the Jackson backyard are a swimming pool and cabana and a two-story, two-car garage. The doctor and his wife also wished to develop a tennis court 120 feet long and 47 feet wide which is to be located behind the garage. Because their property was located in a preservation district they are required to obtain a certificate of appropriateness from the Preservation Board. The board granted the certificate, subject to various conditions and landscaping requirements.

Petitioners instituted this article 78 proceeding alleging that the certificate was improperly issued because (1) petitioners did not receive notice of the proceedings, (2) the procedures established under the Rochester Preservation Ordinance are invalid, and (3) the decision of the board was arbitrary.

Respondents maintain (1) that the Preservation Board is without authority to deny the development of a use permitted under the applicable zoning ordinance, (2) that the board's action was reasonable and (3) that the petitioners received adequate notice and are not aggrieved by any alleged defect in the ordinance's provisions.

The Legislature has authorized special district regulation by section 96-a of the General Municipal Law (L 1968, ch 513, § 3). That statute provides that municipal corporations may impose special conditions and restrictions for the protection, enhancement and perpetuation and use of places having a special character or special historical or aesthetic interest or value. Such local regulation may include "appropriate and reasonable control of the use or appearance of neighboring private property within public view, or both." The regulation shall be "reasonable and appropriate to the purpose" (General Municipal Law, § 96-a).

Pursuant to this enabling legislation, the City of Rochester adopted an ordinance to "provide a procedure for the review of plans for work in Preservation Districts * * * to ensure that such work will comply with standards established to preserve the integrity of areas and structures which have been determined to merit special protection" (Rochester City Code, § 115-37, subd B). The ordinance provides that no building or structure may be constructed, altered or demolished in a preservation district without the prior approval of the Preservation Board, a nine-member body composed of at least one member of the Rochester Real Estate Board, one member of the Landmark Society of Western New York, Inc., one registered architect and four residents from preservation districts. If the board approves of the proposed use or improvement, it may issue a certificate of appropriateness. This certificate does not take the place of zoning approval but rather, it is in addition to the requirements of compliance with the zoning regulations, much the same as the requirements of building or health codes are superimposed on zoning requirements. Similarly, reliance upon presumed experts to assess the propriety of planned improvements is not unlike the use of building and engineering experts to determine compliance with building codes before the issuance of a permit. The purpose of the Preservation Board is not a zoning purpose to protect the public health, safety and welfare generally (see *Penn Cent. Transp. Co. v City of New York,* 42 NY2d 324, 330;

1 Anderson, New York Zoning Law and Practice, § 8.47; 1 Rathkopf, The Law of Zoning and Planning, §§ 15.01, 15.02; Wilson and Winkler, The Response of State Legislation to Historic Preservation, 36 Law & Contemp Problems 329, 337-339). The zoning district and the permitted zoning uses have already been established by ordinance and must be met before the Preservation Board comes into the picture. But once it is established that the contemplated use is lawful under the zoning ordinances, then if the property is in a preservation district, the Preservation Board must review the application and determine whether the proposed improvement is consistent with the purpose of the Preservation Ordinance to "preserve the integrity of areas and structures which have been determined to merit special protection" by prior designation of the City Council (Rochester City Code, § 115-37, subd B). The power of the board is in a sense superficial. It must be concerned with preserving the appearance of existing structures and uses and insuring that new improvements are consistent with the special values and character of the district.

Contrary to respondents' contention, the board is charged with the responsibility of denying a certificate of appropriateness in the reasonable exercise of its powers if the proposed use or improvement fails to meet the standards of the preservation law, permitted uses of the zoning laws, notwithstanding. Indeed, the Preservation Board would never be called upon to review an application unless the proposed use was lawful (see Rochester City Code, § 115-37, subd D, par [2]).

The property is subject not only to the zoning ordinances but also to the additional requirement of this special type of approval because the Common Council has, by prior legislation, placed it in a preservation district. The case is not unlike the power of municipal bodies to deny a special permit to a legislatively authorized use which is subject to the additional requirement of a special permit (cf. *Gordon v Plonski,* 11 AD2d 693, revd on other grounds 9 NY2d 886). The local legislature having the power to prohibit specific uses in residential districts altogether may lawfully require that those permitted uses be subject to the additional requirement of a special permit, or of Preservation Board approval in preservation districts, as the case may be.

The decision of the Preservation Board involves judgment and expertise and its determination of what changes may or

may not be undertaken in protected districts is to be judged by familiar standards of reasonableness. What might be an appropriate improvement in one preservation district may be wholly inappropriate in another. If the board's decision, based upon sufficient evidence, is consistent with the values which the municipality sought to preserve in the special district involved, the board's action is not arbitrary or capricious. The governing consideration is not whether the improvement is beautiful, or tasteful, or even whether it promotes noise or quiet, but rather whether it preserves or interferes with the preservation of the character and values of the district in which it is located. The standard is general but it is related specifically to the district involved, for the ordinance requires that the improvement must be in harmony with the district and "preserve the integrity of the areas and structures" (Rochester City Code, § 115-37, subd B). The regulations do not require that the development of the area remain static but only that the development be consistent with the established nature of the district. It is important that any proposed change should strengthen, not weaken, the character of the district, of course, but in a residential preservation district particularly, it must be remembered that the area is one of residences and improvement must not be overly restricted, unless the municipality is prepared to acquire and maintain the buildings as museums.

Set against this framework, we do not find that the board acted arbitrarily in determining that this tennis court is appropriate in the East Avenue Preservation District. We hardly need to mention that historically tennis courts existed as amenities in many old residential areas and the addition of the proposed improvement hardly alters the established residential character of the district. Indeed, there apparently is at least one existing tennis court near the property involved here. Further than that, this proposed improvement is to be located in a large backyard, invisible from the street and heavily obscured by shrubbery. The Jackson house is not a designated landmark and the improvement does not affect any residence which is. From the record, the proposed improvement apparently offends no one in the area but the petitioners who object to the noise and the appearance of the tennis court when viewed from their back porch.

We may dispose quickly of petitioners' contention that they were denied proper notice of the hearing before the Preserva-

tion Board. The short answer is that they had actual prior notice. Petitioners personally appeared at the board hearing on June 7, 1976 and they appeared and submitted evidence at the adjourned hearing on July 6, 1976. Having had the opportunity to be fully heard on the merits, they are in no position to complain about the inadequacy of the notice or the ordinance's failure to require a public hearing, either (see *Doty v Love,* 295 US 64, 74; *Avelli v Town of Babylon,* 54 Misc 2d 662, 664-665; *Matter of Gerling v Board of Zoning Appeals,* 11 Misc 2d 84, 88-89, revd on other grounds 6 AD2d 247).

Further than that, however, the ordinance need not give adjoining owners personal notice of the Jackson application. While we may recognize the legitimate interests of adjoining owners particularly and of the public generally, in the preservation of landmarks and special preservation districts (see *Penn Cent. Transp. Co. v City of New York,* 42 NY2d 324, 328, *supra),* this interest is not of constitutional dimension as claimed by petitioners. Nor did the board act without jurisdiction because it failed to give petitioners personal notice of the Jackson application before approving it (see *Ottinger v Arenal Realty Co.,* 257 NY 371; see, also, *Matter of Gazan v Corbett,* 278 App Div 953, affd 304 NY 920). Cases to the contrary, cited in petitioners' brief, deal with notice to an affected owner, not adjoining owners.

We find no disputed questions of fact relevant to the board's determination which require a trial.

The judgment should be affirmed.

CARDAMONE, J. P., DILLON, HANCOCK and DENMAN, JJ., concur.

Judgment unanimously affirmed, without costs.