**FLORIDA EAST COAST PROPERTIES, INC., a Florida Corporation, Plaintiff-Appellant,**

v.

**METROPOLITAN DADE COUNTY, a Political Subdivision of the State of Florida, Defendant-Appellee.**

No. 76–2065.

United States Court of Appeals, Fifth Circuit.

May 12, 1978.

Phillip E. Walker, Alan G. Greer, Miami, Fla., for plaintiff-appellant.

Stephen P. Lee, III, Asst. Dade County Atty., Stuart L. Simon, Atty., Miami, Fla., for defendant-appellee.

Before CLARK and GEE, Circuit Judges, and LYNNE, Senior District Judge *.

LYNNE, District Judge:

This is an appeal from a final judgment entered by the district court after a bench trial. The plaintiff-appellant, Florida East Coast Properties, Inc. (FECP), owns some thirty-six acres of land located in Metropolitan Dade County, Florida, which it purchased in early 1973 for condominium construction and development. This land was and remains zoned as a multiple family residential area. The southern boundary of FECP's land is adjacent to a parcel of land, consisting of some twenty acres, owned by defendant-appellee Metropolitan Dade County (County), a political subdivision of the State of Florida. The County's land forms a small peninsula surrounded by a lake on three sides and a highway on the other. It is contiguous to FECP's property at one point and is separated by as little as two hundred and fifty feet of water at another. In late 1973 the County began

---

* Senior District Judge of the Northern District of Alabama, sitting by designation.

construction of the North Dade Detention and Treatment Center on this peninsula.[1] The Center was completed and placed in operation on September 17, 1974, as a combination jail and work release facility which houses persons who have been either charged with or convicted of crimes. The location of this facility is the focal point of this litigation, commenced shortly after its completion.

The court below held against appellant on each of its several contentions: (1) that the erection of the jail/work-release facility adjacent to plaintiff's residential property had caused an extreme diminution in the market value of FECP's property and therefore constituted a taking without just compensation in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States; (2) that the location of the jail/work-release facility results in the disturbance of use and enjoyment of FECP's property so as to constitute a nuisance; and (3) that the County had caused FECP to be taxed more heavily than other property owners as a result of the erection of this facility, thereby violatng FECP's constitutional right to equal protection of the law. We affirm.

### TAKING WITHOUT JUST COMPENSATION

We eschew any attempt to explore the esoteric question: can there be a taking without a touching? Rather, our review is confined to a narrow survey of the precise conclusion of the trial court that, on the evidence before it, there had been no taking in the constitutional sense.

At the trial the court received extensive photographic evidence and oral testimony relating to the character and appearance of the County's facility as well as expert appraisals of its impact upon the market value of the FECP property. FECP also introduced evidence in support of its insistence that it had lost two contracts for the sale of its land because of the proximity of the County's facility. A psychologist testified that people generally fear living near jails. However, there was no evidence of any physical intrusion [2] or encroachment upon FECP's property, or its use, except with respect to the claimed economic loss in value.

■■■ The Constitution provides that private property shall not be taken without just compensation and thus a question "arising under" the Constitution is presented in this case. *Southpark Square Ltd. v. City of Jackson, Miss.*, 565 F.2d 338 (5th Cir. 1977). However, there is a well recognized distinction between damage and taking, and that distinction must be observed in applying the constitutional provisions here relied upon. *Bedford v. United States*, 192 U.S. 217, 224, 24 S.Ct. 238, 48 L.Ed. 414

---

1. An action was instituted to enjoin this construction as being contrary to the zoning classification of the County's property. While several hearings on the proposed construction had been held, the County conceded that it erected this facility in an "Interim Use" zone without taking any action to change that classification and that such a jail/work release facility was not otherwise provided for in an "Interim Use" zone. The County maintained (and continues to urge) that it was not bound by its own zoning ordinances at the relevant time. A temporary injunction was issued against further construction by a state trial court on June 25, 1973. That order was reversed by the Florida Court of Appeals in *Metropolitan Dade County v. Parkway Towers Condominium Assoc.*, 281 So.2d 68 (Fla.App.1973). The Florida Supreme Court granted certiorari, heard oral argument and considered briefs on the zoning issue, but later discharged the writ. In discharging the writ, the court expressed the "view prospec-

tively" that municipalities ought to comply with or properly alter their own zoning ordinances in efforts to accomplish goals such as the construction of this facility. *Parkway Towers Condominium Assoc. v. Metropolitan Dade County*, 295 So.2d 295 (Fla.1974).

FECP has attempted to have this prospective observation by the Florida Supreme Court shape the character of this action which was filed shortly thereafter. However, we decline to grant it the retrospective effect which the state courts have refused after extensive consideration in that system. *See Breland v. Rice*, 496 F.2d 89 (5th Cir. 1974).

2. There was some testimony to the effect that the County's facility had suffered some sixteen escape attempts prior to the trial and that one of these escapees may have traversed some portion of FECP's property before being apprehended.

(1904). The essential inquiry is whether the injury to the private property owner is merely in the nature of a tortious invasion of his property rights or rises to the magnitude of an appropriation of some interest in his property. In this regard, what constitutes a "taking" of private property is not susceptible of facile definition, but it is axiomatic that "it is the character of the invasion, not the amount of damage which results from it . . ." which determines the question of whether there has been a taking. *United States v. Cress*, 243 U.S. 316, 328, 37 S.Ct. 380, 385, 61 L.Ed. 746 (1917). Moreover, the concept of condemnation is so firmly wedded to property rights that a taking is to be found only where inroads are made upon an owner's use of his property to an extent that some type of servitude may be acquired by the government. *See United States v. Dickinson*, 331 U.S. 745, 748, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947). In the quest to receive compensation for an alleged "taking," an action in the nature of inverse condemnation may be initiated by the private landowner where the government has not directly proceeded to appropriate title or possession of the property but has destroyed its actual usefulness and value by reason of the *de facto* exercise of the power of eminent domain. *Pumpelly v. Green Bay & Mississippi Canal Co.*, 80 U.S. 166, (13 Wall.), 20 L.Ed. 557 (1871); *Omnia Co. v. United States*, 261 U.S. 502, 505, 43 S.Ct. 437, 67 L.Ed. 773 (1923).

█ In the case sub judice, FECP urges that the effect of the County's construction of this jail/work-release facility was to diminish the value of FECP's property to such an extreme degree as to constitute a taking in the constitutional sense. However, such a bare contention overlooks the basic concept that it is the adverse appropriation or use of some private property right by the government, as opposed to an incidental consequence arising from the government's use of its own property, which leaves the realm of tortious invasion and rises to the constitutional level of taking private property. In *Transportation Company v. Chicago*, 99 U.S. 635, 25 L.Ed. 336 (1878), Mr. Justice Strong, writing for the Court, stated:

> But acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision. 99 U.S. at 642, 25 L.Ed. 336.

█ We have previously held that notwithstanding an effect upon property values by government action, there is no taking within the purview of the Fourteenth Amendment without some diminution in the owner's rights of use in his property. *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975).[3] Thus the *sine qua non* of a constitutional taking is a loss occasioned by an intrusion, interference or encroachment of some degree upon the private property owner's *rights* in his property. Consequential damages or losses are not enough. *See United States v. Causby*, 328 U.S. 256, 265, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946). While the character of the neighborhood may have been altered by the construction and operation of the County's facility, there has been no alteration or interference with FECP's property or property rights. Diminution in value alone is simply not sufficient to present a cognizable claim for compensation under the Fifth or Fourteenth Amendments.[4]

---

**3.** That opinion cited *Woodland Market Realty Co. v. City of Cleveland*, 426 F.2d 955 (6th Cir. 1970), where the Sixth Circuit held that a decline in property values caused by a change in the neighborhood through urban renewal projects was not a taking. *See also Ortega Cabrera v. Municipality of Bayamon*, 562 F.2d 91 (1st Cir. 1977).

**4.** The Kentucky Court of Appeals explained this principle of the insufficiency of consequential damages quite artfully when it stated:

> It is fundamental that a buyer of property assumes the risk of changing community conditions. Sometimes the value of his property is enhanced, and he does not have to pay for the enhancement. Sometimes it declines,

## NUISANCE

 FECP has attempted to combine its hermaphroditic claim of "inverse condemnation via nuisance" with a pendent claim of common law nuisance. Since we decline herein to apply retrospectively the prospective admonition by the Florida Supreme Court that a municipality must obey its own zoning ordinances, the County's facility cannot constitute a nuisance per se. Generally, before a thing becomes a nuisance per se at common law, it must be either unlawful in itself or of such inherent qualities that its natural tendency, wherever located, is to produce injury. 58 Am. Jur.2d *Nuisances* § 13. While a jail/work-release facility may be considered an unhappy addition to our environment, it is not of such an inherently dangerous character as to make it a nuisance per se. Rather, it is an unfortunate necessity which renders society safer by its presence (when properly maintained) than it would be in its absence.

 The issue of whether a jail/work-release facility may become a nuisance in fact, when not properly placed or maintained, has also been raised in this cause. Florida law defines a nuisance as anything which annoys or disturbs one in the free use, possession or enjoyment of his property, or which renders its ordinary use of occupation physically uncomfortable. *Jones v. Trawick*, 75 So.2d 785 (Fla.1954). While there may be some apprehension caused by the proximity of a detention facility to a residential area, that fact cannot be singularly determinative of the issue. *Cf. A&P Food Stores, Inc. v. Kornstein*, 121 So.2d 701 (Fla.App.1960).

 In every case, the court must make a comparative evaluation of the conflicting interests according to objective legal standards, and the gravity of harm to the plaintiff must be weighed against the utility of the defendant's conduct. W. Prosser, *Law of Torts* § 89 at 596 (4th ed.

and he has no recourse. These facts of life are not subject to an exception simply because the source of the transition can be identified and is suable. *Louisville and Jefferson County Air Board v. Porter, Kentucky*, 397 S.W.2d 146, at 152 (Ky.App.1965).

1971). The trial court found that there was nothing about the appearance of the County's facility to indicate its use as a jail or detention center. The record also discloses that the facility was located between FECP's property and a large industrial park so that its location and architecture did not resemble a "pig in a parlor." Additionally, there was evidence of a telephone survey introduced at the trial which indicated that most of the residents in this area were unaware of the facility's true nature and found it quite attractive. The fact, standing alone, that FECP has suffered a decline in market value of its property has no more probative effect to establish nuisance than to prove a taking in the constitutional sense. Thus we cannot find that the trial court was clearly erroneous when it found that this facility did not constitute a nuisance.

## EQUAL PROTECTION

Finally, with regard to FECP's contention that the County has violated FECP's constitutional rights to equal protection of the law by failing to reduce FECP's property taxes in accordance with the zoning aberration caused by the construction of the jail in a technically incompatible zone, it was disclosed by counsel for the County during oral argument that there has been a 15% tax reduction, ordered by a Special Master in 1974. Significantly, FECP adduced no persuasive evidence that its tax treatment differed from that of others similarly situated, the *sine qua non* for establishing an equal protection violation.

For the reasons discussed above the judgment of the district court is AFFIRMED.

In the instant case, there were no findings of fact made by the trial court as to whether FECP's property had actually declined in value and the issue was sharply disputed in the evidence.