**CAPITOL HILL RESTORATION SOCIETY, INC., Petitioner,**

v.

**Robert L. MOORE, Designated Agent, Pursuant to D.C.Law 1–80, Respondent,**

Barrett M. Linde and Management and Development Associates, Inc., Intervenors.

No. 14103.

District of Columbia Court of Appeals.

Argued May 17, 1979.

Decided Aug. 29, 1979.

Andrew N. Vollmer, Washington, D. C., with whom Michael R. Klein and George F. Carpinello, Washington, D. C., were on the brief, for petitioner.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom Louis P.

Robbins, Acting Corp. Counsel, Washington, D. C., when the brief was filed, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Robert E. O'Malley, Washington, D. C., with whom Robert J. Massie and Steven M. Wallman, Washington, D. C., were on the brief, for intervenors.

Before HARRIS, MACK and FERREN, Associate Judges.

HARRIS, Associate Judge:

Petitioner seeks reversal of a determination made pursuant to the Historic Sites Subdivision Amendment of 1976, D.C.Law 1–80, 22 D.C.Reg. 7240 (June 29, 1976), that a proposed subdivision of certain property would not be contrary to the public interest and should not be delayed. We conclude that we do not have direct review jurisdiction, and accordingly dismiss the appeal.

I

In August of 1977, the owners (intervenors herein) of six buildings located along Third Street and Maryland Avenue, N.E., applied to the District of Columbia government for permits to demolish those structures in order to make way for a new townhouse development. Since the buildings were located within an area listed in the National Register of Historic Places, the applications triggered D.C. Regulation 73–25 [Title 5A–1, § 109.10, D.C. Building Code (1977)] (the "Demolition Ordinance"), which provides for delay in the demolition of such buildings if demolition would be contrary to the public interest. On September 27, 1977, destruction of the buildings was delayed by respondent[1] for 180 days, during which time the owners, interested civic groups (including petitioner), and representatives of the city government negotiated pursuant to the regulation in an attempt to preserve the structures.[2]

Those negotiations proved to be fruitful, with the owners agreeing to make substantial changes in their development plans. Among these were the decisions (1) to preserve and rehabilitate, instead of raze, three of the six buildings, (2) to reduce the total number of new units to be built, (3) to increase the number of two-bedroom units, and (4) to have the new buildings conform generally to the style of the neighborhood. Thus, at the conclusion of the six-month delay period, all parties appeared to be satisfied and the owners proceeded with the project.

After the demolition of the three buildings, a necessary next step in the development process was for the owners to obtain a new plat of subdivision for the then partially vacant site. Normally, such a request routinely is handled by the Surveyor of the District of Columbia, but, once again, because the land is listed in the National Register of Historic Places, another special provision, D.C.Law 1–80, 22 D.C.Reg. 7240 (June 29, 1976) (the "Subdivision Ordinance"), came into play. This law is the subdivision counterpart to the previously-invoked Demolition Ordinance and provides for similar delay and negotiating procedures if the proposed subdivision is found to be contrary to the public interest.[3] On Oc-

---

1. We use the term "respondent" for convenience. The present respondent was named after this appeal was filed. Originally, Lorenzo W. Jacobs, Jr., was the respondent in his capacity as the District of Columbia State Historic Preservation Officer; it was he who dealt with the parties for purposes of Regulation 73–25 and D.C.Law 1–80.

2. Five formal negotiating sessions were conducted by the District of Columbia State Historic Preservation Officer or his representative and members of the Joint Committee on Landmarks.

3. The Subdivision Ordinance provides in relevant part:

> Before any subdivision is admitted to record which contains any land in the District of Columbia which includes a district, area, place, or site, or part thereof, listed on the National Register of Historic Places . . . or on which is situated a building or structure located within a district or site listed on the National Register, or on which is situated a building or structure listed in the District of Columbia's inventory of historic sites contained in the comprehensive statewide historic preservation survey and plan . . . . the

.tober 6, 1978, in compliance with the Subdivision Ordinance, the D.C. Surveyor submitted the owners' application to respondent. Thereafter, on October 19, 1978, at respondent's behest, the Joint Committee on Landmarks held a public meeting to discuss the subdivision with interested parties. At that meeting petitioner objected to the proposed design of the townhouses, urging essentially that it was inconsistent with the surrounding area and therefore contrary to the public interest. Despite these protestations, at the conclusion of the meeting the Joint Committee unanimously recommended that respondent find that the proposed subdivision would not be contrary to the public interest and should not be delayed. On October 26, 1978, respondent made such a finding and so informed the Surveyor.

Petitioner contends that although the Subdivision Ordinance and its accompanying explanatory regulations do not require it, respondent nevertheless must provide a

Surveyor shall submit the application for such subdivision to the Mayor of the District of Columbia, or his designated agent, who shall place notice of the application for the subdivision in the *District of Columbia Register.* The Mayor, or his designated agent, acting with the advice of the [Joint Committee on Landmarks] . . . shall within sixty days determine whether the subdivision is contrary to the public interest and should be delayed for a designated period of up to one hundred eighty days following such determination to permit the District of Columbia State Historic Preservation Officer and the [Joint Committee on Landmarks] to negotiate with the owner or owners of the land which is the subject of the application of subdivision, and with civic groups, public agencies, and interested citizens, to find a means of preserving the said land. Before issuing any order delaying such subdivision, the Mayor or his designated agent shall afford the applicant and any interested parties an opportunity to offer any evidence they may desire to present concerning the proposed order. [22 D.C.Reg. 7240–42.]

4. Section 2.24 of the Categories, Standards and Administrative Procedures for Subdivision of Historic Sites, 23 D.C.Reg. 4027, 4032 (1976), provides: "If the proposed subdivision was determined to *not* be contrary to the public interest, the Mayor shall so inform the Applicant."

statement of reasons to support his conclusion that the subdivision is not contrary to the public interest.[4] The District maintains, however, that that question is not properly before us because this court does not have jurisdiction to review respondent's action in the first instance. It is this jurisdictional issue to which we now turn.

## II

■■■ D.C.Code 1973, § 11–722, authorizes this court to review agency action "in accordance with the District of Columbia Administrative Procedure Act."[5] That Act in turn limits our review to "contested cases," as defined in D.C.Code 1973 Supp., § 1–1502(8).[6] *See id.,* § 1–1510. Thus, pursuant to § 11–722 this court has jurisdiction to review directly agency action taken only in a contested case. *See, e. g., O'Neill v. Office of Human Rights,* D.C.App., 355 A.2d 805, 807 (1976); *Dupont Circle Citizen's Association v. Zoning Commission,* D.C.App.,

5. Section 11–722 provides in pertinent part:
    The District of Columbia Court of Appeals has jurisdiction (1) . . . to review orders and decisions of the Commissioner of the District of Columbia, the District of Columbia Council, any agency of the District of Columbia (including the Board of Zoning Adjustment of the District of Columbia and the Zoning Commission of the District of Columbia), and the District of Columbia Redevelopment Land Agency, in accordance with the District of Columbia Administrative Procedure Act (D.C.Code, secs. 1–1501—1–1510) . . . ..

6. That section provides:
    [T]he term "contested case" means a proceeding before the Mayor or any agency in which the legal rights, duties or privileges of specific parties are required by any law (other than this subchapter), or by constitutional right, to be determined after a hearing before the Mayor or before an agency, but shall not include (A) any matter subject to a subsequent trial of the law and the facts de novo in any court; (B) the selection or tenure of an officer or employee of the District; (C) proceedings in which decisions rest solely on inspections, tests, or elections; and (D) cases in which the Mayor or an agency act [sic] as an agent for a court of the District . . . ..

343 A.2d 296, 298–99 (1975) (en banc). Under our decisions, in order for a matter to be a contested case, it must involve a trial-type hearing which is required either by statute or by constitutional right. *See, e. g., Chevy Chase Citizens Association v. District of Columbia Council*, D.C.App., 327 A.2d 310, 314 (1974) (en banc). Petitioner recognizes that a trial-type hearing is not conducted before a decision is made pursuant to the Subdivision Ordinance that a proposed subdivision would not be contrary to the public interest.[7] Accordingly, petitioner concedes that respondent's decision did not involve a contested case.[8] That being so, the question becomes whether this court has jurisdiction to directly review respondent's action as taken in a noncontested case.

Relying on *Hotel Association of Washington, D. C. v. Minimum Wage and Industrial Safety Board*, D.C.App., 318 A.2d 294 (1974) (en banc), petitioner contends that we have jurisdiction over any agency decision, regardless of whether it arose out of a contested case, when an organic act provides a right of direct appeal to this court. Petitioner notes that in *Hotel Association* this court concluded that it could review a determination by the Minimum Wage and Industrial Safety Board, even though there was no contested case, because the organic act of the Board provided for such review.[9] *See id.*, at 304–05. In petitioner's view this means that when any organic act provides

for direct review, we have jurisdiction. Completing the syllogism, petitioner points out that § 4 of the Subdivision Ordinance is an organic act providing direct review of all of respondent's decisions.[10] Therefore, it maintains, we properly may review this noncontested case.

■ The underlying flaw in petitioner's analysis is its premise that in *Hotel Association* we held that any organic act could provide us with direct review powers over noncontested cases. The *Hotel Association* holding is not that broad. Rather, that case stands for the proposition that when Congress has authorized direct review apart from that provided by § 11–722, we have an additional form of jurisdiction over agency action, based on the particular congressional organic act, which does not require the existence of contested case status. *See Dupont Circle Citizen's Association v. Zoning Commission, supra*, at 302. More precisely, after the *Hotel Association* case it is evident that there are two limited but distinct bases for this court's direct review jurisdiction: The first is our general grant of agency review jurisdiction contained in § 11–722, with its contested case requirement. The second is a congressional direction of review contained in an organic act.

■ Here we do not have a contested case. Further, we do not have a congressional organic act. The Subdivision Ordinance was authored by the Council of the District of Columbia, not by Congress.

7. We need not reach the question of whether a finding that a proposed subdivision would be contrary to the public interest would fall within the definition of a contested case.

8. For a description of respondent's decision-making process, see 23 D.C.Reg., *supra*, at 4032.

9. The statute in question in *Hotel Association* provides:

(a) Any person aggrieved by an order of the Commissioner issued under this subchapter may obtain a review of such order in the District of Columbia Court of Appeals by filing in such court, within sixty days after the issuance of such order, a written petition praying that the order of the Commissioner be modified or set aside in whole or in part. The review shall be governed by the District

of Columbia Administrative Procedure Act (D.C.Code, secs. 1–1501 to 1–1510). [D.C. Code 1973, § 36–409(a).]

10. Section 4 of the Subdivision Ordinance provides:

Any person or class of persons aggrieved by a decision of the Mayor, or his designated agent, or by any failure on the part of the Mayor, or his designated agent, to act, with respect to any action relating to historic subdivisions which is authorized by the amendment made by section 2, may seek judicial review of such decision or failure to act by filing a petition for review in the District of Columbia Court of Appeals within 30 days after such decision has been made or such act should have been taken. [22 D.C.Reg. 7242.]

Since the organic act now before us is not a congressional grant of jurisdiction, if we were to have the authority to review respondent's action taken herein, it would be because the Council in § 4 of the Subdivision Ordinance had expanded our traditional jurisdictional grant under Title 11 to encompass noncontested cases. However, under the District of Columbia Self-Government and Governmental Reorganization Act, D.C.Code 1978 Supp., § 1–147(a)(4), the Council is precluded from taking such action.[11]  Cf. Columbia Realty Venture v. Housing Rent Commission, D.C.App., 350 A.2d 120, 124 (1975). Thus we conclude that § 4 of the Subdivision Ordinance cannot empower this court to directly review noncontested cases, and we therefore do not have jurisdiction in this matter at this time.

We observe, however, that we are not foreclosing all review of respondent's actions in this instance or in other noncontested matters; we are foreclosing only direct review in this court. Any party aggrieved by an agency's decision may initiate an appropriate equitable action in the Superior Court to seek redress. See, e. g., American University Park Citizens Association v. Burka, D.C.App., 400 A.2d 737, 742–43 (1979); Columbia Realty Venture v. Housing Rent Commission, supra, at 123; Dupont Circle Citizen's Association v. Zoning Commission, supra, at 308 (GALLAGHER, J., concurring); Chevy Chase Citizens Association v. District of Columbia Council, supra, at 317 n.18. Then, depending on the outcome in the trial court, a party could choose to appeal to this court. This serves the dual purposes of providing for initial review in a forum which is well-suited for the task and of providing an opportunity for the preparation of a more complete and detailed record—which inherently is typically lacking in a noncontested case—for ultimate review by this court, if necessary.

Dismissed.

11. D.C.Code 1978 Supp., § 1–147(a)(4), provides:

    (a) The Council shall have no authority to

(4) enact any act, resolution, or rule with respect to any provision of title 11 of the District of Columbia Code (relating to organization and jurisdiction of the District of Columbia courts);