DUPONT CIRCLE CITIZENS
ASSOCIATION, Petitioner,

v.

Marion BARRY, Mayor of the District of
Columbia, et al., Respondent.

International Association of Machinists
and Aerospace Workers, Intervenor.

Nos. 81–1254, 82–116.

District of Columbia Court of Appeals.

Argued Aug. 25, 1982.
Decided Jan. 7, 1983.

---

1. *Hawkins v. United States,* D.C.App., 434 A.2d 446 (1981); *Johnson v. United States,* D.C. App., 398 A.2d 354 (1979).

Robert K. Stumberg, Washington, D.C., with whom Lucy A. Weisz, Washington, D.C., was on the brief, for petitioner.

Richard B. Nettler, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Louis P. Robbins, Washington, D.C., with whom Norman Glasgow, Washington, D.C., was on the brief, for intervenor.

Before KERN, MACK and BELSON, Associate Judges.

KERN, Associate Judge:

This dispute arises out of a decision of the Mayor's Agent under D.C.Law 2–144 (The Historic Landmark and Historic District Protection Act of 1978, codified at D.C.Code 1981, §§ 5–1001 *et seq.*), not to grant a hearing to petitioner, the Dupont Circle Citizens Association (hereinafter "CA"), prior to either preliminary or final approval of an application by intervenor, the International Association of Machinists and Aerospace Workers (hereinafter "IAM"), for a con-

struction permit to build on vacant land in a historic area of the city.[1]

Petitioner contends both that resident owners of property in the Dupont Circle Historic District have constitutionally protected property interests which would be adversely affected by construction of the building, and that the "design review process" for new construction is a "contested case"[2] bringing it within the ambit of our jurisdiction under D.C.Code 1981, § 11–722.[3] We reject both of petitioner's arguments and, finding no basis upon which we have jurisdiction, dismiss this appeal.

I

On October 29, 1979, IAM submitted a permit application to the Mayor's Agent for approval of new construction on a vacant site at 1330 Connecticut Avenue, N.W. in recognition of the fact that the construction would take place on land within the Dupont Circle Historic District. Accordingly, the design review process under the Historic Landmark and Historic District Protection Act (hereinafter "The Act") came into play and, appropriately, the Mayor's Agent referred the application to the Joint Committee on Landmarks (hereinafter "JCL") for a recommendation on the compatability of the proposed project with the historic district.[4] After a series of public meetings, the JCL recommended that the Mayor's Agent not issue the construction permit.[5] Upon IAM's request,[6] a public hearing was convened before the Mayor's Agent on May 21–22, 1980. At the hearing's conclusion, the Mayor's Agent concurred generally in the recommendation of the JCL, holding specifically that the proposed design presented "a flat horizontally banded wall ... in contrast with the repeated vertical patterns of the predominant historical design."[7] The permit was not issued.[8] We

1. Pertinent to this case, § 5–1007 states concerning "new construction" in a historical district:

   (a) Before the Mayor may issue a permit to construct a building or structure in an historic district ..., the Mayor shall review the permit application in accordance with this section and shall place notice of the application in the District of Columbia Register.
   
   \* \* \* \* \* \*
   
   (e) In any case where the Mayor deems appropriate, or in which the applicant so requests, the Mayor shall hold a public hearing on the permit application.
   
   (f) The permit shall be issued unless the Mayor, after due consideration of the zoning laws and regulations of the District of Columbia, finds that the design of the building and the character of the historic district ... are incompatible: Provided, that in any case in which an application is made for the construction of an additional building or structure on a lot upon which there is presently a building or structure, the Mayor may deny a construction permit entirely where he finds that any additional construction will be incompatible with the character of the historic district....

2. D.C.Code 1981, § 1–1502(8) defines contested case as follows:

   The term "contested case" means a proceeding before the Mayor or an agency in which *the legal rights, duties or privileges of specific parties* are *required by any law* (other than this subchapter), or by constitutional right, *to be determined after a hearing* before the Mayor or before an agency ....

3. Section 11–722 provides in pertinent part:

   The District of Columbia Court of Appeals has jurisdiction ... to review orders and decisions of ... any agency of the District of Columbia ... in accordance with the District of Columbia Administrative Procedure Act....

4. Section 5–1007(b) states: "Prior to making the finding on the permit application required by subsection (f) of this section, [*see* note 1, *supra*], the Mayor may refer the application to the Historic Preservation Review Board (herein JCL) for a recommendation ...." *See also* § 5–1007(f).

5. The JCL particularly recommended that IAM deemphasize the verticality of one side of the structure.

6. Section 5–1007(e) requires that a public hearing be convened whenever the Mayor deems appropriate or when the applicant requests a hearing.

7. *See generally,* Government's Exhibit "A": The order of the Mayor's Agent denying issuance of the permit in HPA No. 80–71 (revised).

8. Although the application for a permit was denied, the zoning commission approved IAM's

note that at all times petitioner participated in these proceedings as a party in opposition and was afforded an opportunity to address its concerns to the JCL and the Mayor's Agent.[9]

Subsequent to the permit denial, on August 14, 1980, IAM resubmitted its application for conceptual design review to the Mayor's Agent. IAM had significantly revised its building design in an attempt to address the concerns of the JCL and the Mayor's Agent relative to the proposed building's compatibility with the surrounding historic district. Again, the application was referred to the JCL for its recommendation. Petitioner promptly informed both the Mayor's Agent and the JCL that it opposed IAM's renewed application because such application, although revised, continued to propose a design which clashed with the architecture of the historic district.[10]

Over the following year, the JCL held seven separate public meetings at which the IAM building design was reviewed. Petitioner attended each meeting and participated through submission of its views in oral testimony and by documentation.[11] Petitioner made clear its opposition to the design and proposed various ways of meeting its continuing objections to the design. Nevertheless, upon satisfaction of various design concerns expressed by the JCL, the JCL recommended that the permit be granted.[12] Accordingly, IAM submitted its application to the Mayor's Agent for preliminary approval.

On September 9, 1981, upon consideration of the JCL recommendation, the design drawings submitted by IAM, and the written objections[13] already submitted by petitioner, the Mayor's Agent gave preliminary approval to the proposed project. Thereafter, on September 11, petitioner by letter, again requested a public hearing before the Mayor's Agent on the permit application.[14] Upon the receipt of IAM's response to petitioner's letter, the Mayor's Agent considered petitioner's request and the opposition thereto, and concluded that a hearing was *not* required in the matter. He noted especially that IAM had addressed to the satisfaction of the JCL unique design problems posed by a building which fronted on two different streets situated in a historical area, *viz.,* Connecticut Avenue and N Street. Further, he stated that the views of petitioner had been fully considered by the JCL within the appropriate administrative framework. With submission of the JCL-approved final drawings, the Mayor's Agent issued a permit.

## II

As a preliminary matter, we must address intervenor's (IAM) argument that petitioner does not have standing to bring this

---

planned unit development (PUD). We upheld this decision. *See Dupont Circle Citizens Ass'n v. District of Columbia Zoning Comm'n,* D.C. App., 431 A.2d 560 (1981).

**9.** The CA asserted generally that "the proposed building would grievously harm the historic district to the extent of threatening its survival." *See* Government's Exhibit "B", Letter from the Dupont Circle Citizens Association to Robert Moore, Mayor's Agent, concerning IAM's application.

**10.** We note that petitioner also asserted that certain procedural matters precluded IAM's renewed application. These claims were ultimately found to be without merit by the Mayor's Agent.

**11.** We note that petitioner repeatedly attempted to testify as to the design inadequacies of the proposed 19th and N Streets facade. The

JCL had earlier given general approval to that portion of the design and therefore ruled any further testimony on this aspect would be irrelevant to the proceedings.

**12.** On March 12, 1981, the Zoning Commission approved the minor modifications to the PUD it had previously approved. *See* note 8, *supra.*

**13.** By letters of March 6 and April 24, petitioner had already informed the JCL of the precise nature of its objections to the design, and its request for a hearing.

**14.** Petitioner was at the time of writing its September letter unaware that the Mayor's Agent had already extended preliminary approval to the project.

appeal.[15] Under the District of Columbia Administrative Procedure Act (DCAPA), we may entertain administrative appeals brought by "[a]ny person suffering a legal wrong, or adversely affected or aggrieved, by an order or decision of the Mayor or an agency in a contested case ...."[16] *See Lee v. District of Columbia Board of Appeals and Review*, D.C.App., 423 A.2d 210, 215 (1980). Because of this limited class of persons entitled to prosecute an administrative appeal, we are obliged to review IAM's initial claim. *See United States v. Storer Broadcasting Co.*, 351 U.S. 192, 197, 76 S.Ct. 763, 767, 100 L.Ed. 1081 (1956).

In *Basiliko v. District of Columbia*, D.C. App., 283 A.2d 816 (1971), we specifically adopted the three-pronged standard first established in *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), for standing to seek review of an administrative agency's decision.[17] *See also, Apartment and Office Building Ass'n of Metropolitan Washington v. Washington*, D.C. App., 343 A.2d 323, 331 (1975); *Board of Elections v. Democratic Central Committee*, D.C.App., 300 A.2d 725, 726 (1973). A petitioner must allege (1) that the challenged action has caused him injury in fact, (2) that the interest sought to be protected by petitioner is arguably within the zone of interests protected under the statute or con-

stitutional guarantee in question, and (3) that no clear legislative intent to withhold judicial review is apparent. *See Lee v. District of Columbia Board of Appeals and Review, supra* at 216.

■ It is undisputed that there is no clear legislative intent to withhold judicial review. Nevertheless, IAM contends that petitioner failed to meet either the first or second of the three prongs for standing. Thus, we must focus on the petitioner's claim of injury. The CA is a chartered representative of its members, and therefore, is empowered to assert the economic and aesthetic injuries claimed by its members for the purpose of establishing standing. *See Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).[18]

■ While it is true that petitioner must plead the "real, perceptible, concrete, specific and immediate" injury that its members have suffered, see *Lee v. District of Columbia Board of Appeals and Review, supra* at 216, threats to the use and enjoyment of an aesthetic resource may constitute an injury in fact. *See Sierra Club v. Morton*, 405 U.S. 727, 734, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *Neighborhood Development Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21, 23 (6th Cir.1980). Here, petitioner's pleading of injury was the asserted clash of the proposed design

15. We note that neither petitioner in its original brief, nor the government in its response, addressed this issue. The issue is framed in intervenor's brief and petitioner's subsequent reply.

16. D.C.Code 1981, § 1–1510.

17. In *Basiliko, supra* the court referred to *Ballerina Pen Co. v. Kunzig*, 140 U.S.App.D.C. 98, 433 F.2d 1204 (1970), *cert. denied sub nom. National Industries for Blind v. Ballerina Pen Co.*, 401 U.S. 950, 91 S.Ct. 1186, 28 L.Ed.2d 234 (1971); and *Scanwell Laboratories, Inc. v. Shaffer*, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970). Further, we are not unaware that in *Lee v. District of Columbia Board of Appeals and Review, supra* at 216 n. 12, we noted that the Supreme Court in *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 42–46, 96 S.Ct. 1917, 1926–28, 48 L.Ed.2d

450 (1976), had added a fourth prong to this standard: petitioner must show a substantial probability that the requested relief would alleviate his asserted injury. We do not, however, think that it can be disputed that granting the requested relief would alleviate petitioner's asserted injury.

18. In order to bring an associational suit, the Association must show (1) that its members would otherwise have standing to sue in their own right, (2) that the interest it seeks to protect is germane to the association's purposes, and (3) that neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

with the character of the historic district.[19] Also, petitioner's asserted interest in preserving the integrity of the historical neighborhood is well within the zone of interests arguably protected by the Act and so meets the second prong of the standing requirement. Thus, in our view CA has established standing.

## II

The substantive question on appeal is jurisdictional in nature. D.C.Code 1981, § 11–722 authorizes this court to review agency action "in accordance with the District of Columbia Administrative Procedure Act."[20] That Act in turn limits our review to "contested cases," as defined in D.C.Code 1981, § 1–1502(8).[21] Thus, pursuant to § 11–722, this court has jurisdiction to review directly agency action taken only in a contested case. *See, e.g., Capitol Hill Restoration Society, Inc. v. Moore,* D.C.App., 410 A.2d 184, 186 (1979); *O'Neill v. Office of Human Rights,* D.C.App., 355 A.2d 805, 807 (1976). Under our decisions, in order for a matter to be a contested case, it must involve a trial-type hearing which is required either by statute or by constitutional right. *Capitol Hill Restoration Society, Inc. v. Moore, supra* at 187; *Chevy Chase Citizens Ass'n v. District of Columbia Council,* D.C.App., 327 A.2d 310, 314 (1974) (en banc).

Petitioner concedes that no direct statutory authority, within either the organic act itself or under distinct congressional authorization,[22] exists to compel the Mayor's Agent to hold a hearing on an application for a new construction permit in a historic district. In fact, the pertinent section of the Act, § 5–1007(e), states that a hearing is required *only* upon the request of the applicant,[23] or where the Mayor's Agent within his or her discretion so determines its necessity. Further, we are unpersuaded by petitioner's argument that it would be "unfair" to permit an aggrieved applicant to demand a hearing while not affording the same right to "injured" property owners in the protected area.[24] It remains therefore for us to determine whether petitioner has a constitutional right to a hearing so as to constitute this case a "contested case."

Petitioner asserts two distinct property interests which it claims merit constitutional protection and require a trial type hearing. Petitioner argues that construction of IAM's building will cause (1) a reduction in property values within the historic district, and (2) permanent damage to the historic character of that designated neighborhood. We are unpersuaded that either of these asserted interests warrants consti-

---

19. We recognize that the CA could have expanded on its pleading which alleged injury on behalf of its members. Enough was alleged, however, to show standing; were we to conclude otherwise, we would be elevating form over substance.

20. *See* note 3, *supra.*

21. *See* note 2, *supra.*

22. *See Capitol Hill Restoration Society, Inc. v. Moore, supra* at 186–88.

23. Presumably, this would arise in instances where the permit applicant had received an unfavorable recommendation from the JCL, as with IAM's first application here.

24. We note that in drafting this legislation the City Council chose to separate the treatment of permit applications for new construction from those which seek to demolish, alter or modify existing structures within a historic area. This

distinction is mirrored in the "Presumption of Issuance" (See § 5–1007(f)) which attaches to applications for new construction. It is logically consistent therefore that the *applicant* where denied a permit should have the ability to *command* a hearing. Further, it appears to us that there is an inherent logic in mandating the scrutiny, provided by a public hearing, of a permit application which seeks to remove or change a building or buildings within a historic district. Presumably, demolition of a building will permanently alter a portion of the very reason for which an area has been deemed a historic district. Construction of a new building, so long as an adequate design review process is established, does not pose the same dangers. We do not therefore think it is either necessary or appropriate to infer a right on petitioner's behalf to *compel* the Mayor's Agent to grant a hearing before issuance of a new construction permit under the Act.

tutional protection. Rather, we conclude that prior to approval of the permit application, the interests the petitioners have pursuant to the Act were adequately protected by the existing review process.

We are guided by the benchmark language in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), which carefully outlines the scope of property interests which warrant constitutional protection, and therefore appropriate procedural safeguards. The Court stated that: "to have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. at 2709. Petitioners asserted interests, *viz.,* that the approved design will diminish individual property values and damage the historic nature of the neighborhood, are not of the magnitude identified in *Roth.*

■ Specifically, while it is true that where government action amounts to a taking,[25] property values are a constitutionally protected interest, proof of a taking requires more than demonstration of a diminution in value. *900 G Street Associates v. Department of Housing and Community Development,* D.C.App., 430 A.2d 1387, 1390–92 (1981). *See e.g., Florida East Coast Properties, Inc. v. Metropolitan Dade County,* 572 F.2d 1108 (5th Cir.), *cert. denied,* 439 U.S. 894, 99 S.Ct. 253, 58 L.Ed.2d 240 (1978); *cf. Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)

(policeman whose position was terminable at will not constitutionally entitled to pretermination hearing); *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (reputation not a constitutionally protected interest). Here, the government action is approval of a construction permit for a building which has been subject to extensive design review so as to harmonize it with the neighborhood architecture. The asserted harm is only *speculative* diminution in property values and an *alleged* blight on the character of the historic district. In our view the government action challenged does not threaten to affect any constitutionally protected interests in a concrete manner.[26] Simply, petitioner's asserted interests are too vague and speculative to command procedural safeguards beyond those already provided by statute presently.

In the case of *Zartman v. Reisem,* 59 A.D.2d 237, 399 N.Y.S.2d 506 (N.Y.App.Div. 1977), when confronted with a similar claim, the court noted: "while we may recognize the legitimate interests of adjoining owners particularly and of the public generally, in the preservation of landmarks and special preservation districts [citation omitted], this interest is not of constitutional dimension as claimed by petitioners." *Id.* at 241, 399 N.Y.S.2d at 510. Even were we to hold that petitioner's interests were of constitutional dimension, we could not conclude that they called for a trial-type hearing, as required to elevate this administrative matter to a contested case.[27] *Capitol Hill Restoration Society, Inc. v. Moore, supra.*

**25.** Government creation of a nuisance may also implicate interests warranting procedural protection. *See generally Florida East Coast Properties, Inc. v. Metropolitan Dade County,* 572 F.2d 1108 (5th Cir.), *cert. denied,* 439 U.S. 894, 99 S.Ct. 253, 58 L.Ed.2d 240 (1978).

**26.** We note particularly that "Petitioner's interest in retaining the historic character of the neighborhood" is not without certain established protections under the zoning laws. D.C. Code 1981, §§ 5–401 *et seq.* But it strains credibility to find *constitutional* protection for the CA's interest in preserving the character of the neighborhood under the Act. It is not that an aggrieved citizens association will be left

without a remedy in the face of allegedly excessive development. Existing zoning laws in concert with the Act provide adequate protection of its interests through appropriate and exhaustive administrative procedures. Residents of a historic area are not vested with a new panoply of constitutionally protected property interests because of this new law, *viz.,* the Act.

**27.** It is significant that petitioner has had continued access to all the hearings before the JCL and the Mayor's Agent concerning the proposed construction. Petitioner has not been denied meaningful participation in this administrative process. A full-blown hearing would be unlikely to produce any material facts un-

Finally, we think it is important to emphasize that the particular administrative decisions to be made under the Act are primarily aesthetic judgments that are peculiarly within the expertise of the JCL. We do not avoid our responsibilities as a reviewing court by acknowledging the expertise of an administrative body duly constituted under the Act to render a decision on the aesthetic qualities of the proposed building design. Considerable time and effort has been expended by the JCL and the Mayor's Agent to insure that the final design is not incompatible with the historic district. The Citizens Association has had a real input. We deem the petitioner's interest to have been adequately protected. Accordingly, we reject its claim that a trial-type hearing is required and order the petition

*Dismissed.*[28]

known by the JCL or the Mayor's Agent at the time of their decisions.

28. We do not hereby foreclose petitioner from access to judicial review of respondent's actions. "Any party aggrieved by an agency's decision may initiate an appropriate equitable action in the Superior Court to seek redress." *Capitol Hill Restoration Society, Inc. v. Moore, supra* at 188.