# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 26, 2010          Decided June 1, 2010

No. 09-7036

MONICA BROOKS AND TRACEE TAYLOR, ON BEHALF OF
THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,
APPELLANTS

v.

DISTRICT HOSPITAL PARTNERS, L.P., DOING BUSINESS AS
GEORGE WASHINGTON UNIVERSITY HOSPITAL,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:01-cv-02361-HHK-AK)

---

*S. Micah Salb* argued the cause and filed the briefs for appellants.

*Jennifer S. Goldstein*, Attorney, Equal Employment Opportunity Commission, argued the cause and filed the brief as *amicus curiae* for appellants.

*Elisha A. King*, *pro hac vice,* argued the cause for appellee. With her on the brief were *Charles B. Wayne* and

*Jamie M. Konn*.

Before: SENTELLE, *Chief Judge*, BROWN and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*:    Appellants challenge the dismissal of their Title VII employment discrimination claims. Conversely, appellee contends the dismissal was proper and, further, that this court does not have jurisdiction to review the dismissal because it was not a final decision of the district court.    We reverse the dismissal and remand for further proceedings, finding this court has jurisdiction to hear the appeal and that the district court improperly held that appellants did not exhaust their administrative remedies.

I

This appeal is merely the latest procedural cul-de-sac off what has been a long and winding road of litigation in this case.    That road originated over a decade ago when defendant George Washington University Hospital[1] decided to eliminate the position of "Nursing Assistant" from its employment classifications and replace it with the position of "Multi-Skilled Technician."    Nursing Assistants, as the title suggests, assisted registered nurses in basic tasks.    MSTs, however, were to perform the tasks of Nursing Assistants and also undertake a wider array of responsibilities.

All Nursing Assistants were invited by GWUH to apply for MST positions by taking a three-part screening test to measure their ability to succeed in a subsequent MST training program.    Nursing Assistants who failed any part of the

---

[1]  The hospital's official business moniker is District Hospital Partners, L.P.

screening test were offered remedial training and an opportunity to retake the failed portions of the test. A second failure disqualified them from the training program. Nursing Assistants who passed the initial screening test entered a MST training program that required successful completion of competency tests. A Nursing Assistant failing any one of those ten tests could obtain remedial training and another chance to be tested. A second failure eliminated the candidate from the program. A Nursing Assistant who passed the post-training tests received one of the MST positions. For those MST positions still vacant, GWUH accepted applications from external applicants. These applicants took the same initial screening test to determine whether they possessed the minimum proficiency to perform the MST job. Successful external applicants did not participate in a MST training program; instead, they had to demonstrate the ability to perform MST duties and were subject to an interview process.

Renae Marable, a Nursing Assistant, passed the initial screening test but was eliminated from the hiring process after failing one of the ten MST competency tests. She filed a complaint with the U.S. Equal Employment Opportunity Commission on behalf of herself and all other similarly situated former Nursing Assistants who were subjected to the three-part screening test. Joining her complaint were specific persons listed in an attachment to the filing. Marable alleged the screening test measured skills unrelated to the MST job and discriminated against African-American Nursing Assistants. The EEOC investigation evaluated data related to both Nursing Assistants and external applicants and found no statutory violation. It concluded the screening test was a valid means of measuring MST skills and the most effective among a number of means considered by GWUH. The EEOC notified Marable of its finding and issued her a right-to-sue letter

certifying that she exhausted her administrative remedies and could pursue judicial relief against GWUH.

In 2001, Marable and five co-plaintiffs filed a lawsuit alleging the screening test and the ten training program tests were discriminatory. The complaint also requested class action certification to represent all other Nursing Assistants similarly situated. In 2004, the plaintiffs moved to extend the class to cover external applicants for the MST position. That motion was denied by the district court because the proposed class did not exhibit the requisite commonality and typicality under FED. R. CIV. P. 23. *See* Mem. Op. & Order, *Marable v. Dist. Hosp. Partners, L.P.*, No. 01-02361 at 12 (D.D.C. Aug. 31, 2006). The court raised the possibility of two subclasses—one for Nursing Assistants and one for external applicants—but determined neither would be certifiable: a Nursing Assistant subclass would not be numerous enough; an external applicant subclass would have no named plaintiff who could act as a proper subclass representative. *See id.* at 12–14.

In response, the plaintiffs moved to add as intervenors two external applicants who failed the three-part screening test: Monica Brooks and Tracee Taylor, the appellants in this appeal. The district court granted the motion. Prior to joining the suit, Brooks and Taylor had not lodged a complaint against GWUH with the EEOC. Ordinarily, parties must file timely charges with the EEOC prior to pursuing relief in court, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973). However, the district court allowed Brooks and Taylor to intervene under the "single-filing" exception to the normal rule. *See* Mem. Op. & Order, *Marable*, No. 01-02361 at 5–6 (D.D.C. May 29, 2007). That exception allows non-filing parties to join the suit of another similarly situated plaintiff who did file an administrative complaint against the same defendant. *See Foster v. Gueory*, 655 F.2d 1319, 1322

(D.C. Cir. 1981).

With seemingly eligible class representatives included as intervenors, the plaintiffs moved for class certification for all external applicants.  This time, the district court denied certification because it found Brooks and Taylor to be improper class representatives.  Although Brooks and Taylor were allowed to join the Marable suit without personally filing an EEOC complaint, the district court concluded a proposed class representative must personally exhaust administrative remedies as a "condition precedent to sustaining a class action under Title VII."  Mem. Op. & Order, *Marable*, No. 01-02361 at 4 (D.D.C. Dec. 1, 2008).  The plaintiffs filed a motion for reconsideration, and the district court denied it.

While the motion for reconsideration was pending, Marable voluntarily dismissed her individual claim with prejudice.  Brooks and Taylor moved to sever their claims from the remaining Nursing Assistant plaintiffs under FED. R. CIV. P. 42(b).  The district court granted their motion but issued an order for Brooks and Taylor to show cause why their claims should not be dismissed and, after reviewing submissions from both sides, dismissed Brooks' and Taylor's claims without further explanation.  *See* Order, *Marable*, No. 01-02361 (D.D.C. Mar. 10, 2009).

Brooks and Taylor appealed that dismissal.  This court ordered them to show cause why the appeal should not be dismissed for lack of jurisdiction pursuant to FED. R. CIV. P. 54(b).  *See* Order, *Brooks v. Dist. Hosp. Partners, L.P.*, No. 09-7036 (D.C. Cir. Apr. 6, 2009).  Under that rule, an order in a multiple claim or multiple party case that adjudicates fewer than all the claims or the rights of fewer than all the parties is not reviewable absent a certification from the district court that the order is a final judgment.  Appellants subsequently moved

for certification in the district court, which granted the motion. The court confirmed that it had "severed the claims of Brooks and Taylor . . . [and] dismissed the[ir] claims . . . in their entirety for failure to exhaust administrative remedies." Order, *Marable*, No. 01-02361 (D.D.C. May 29, 2009). In response to appellants' motion to amend the certification order to explicitly weigh Rule 54(b) considerations, the district court issued an amended order noting that a certification of finality served equitable interests and was not detrimental to judicial economy. *See* Order, *Brooks v. Dist. Hosp. Partners, L.P.*, No. 01-02361 at 1–2 (D.D.C. June 19, 2009). This court discharged its earlier show cause order and directed the parties to address the jurisdictional issue in their main briefing.

## II

### A

We first consider this court's jurisdiction to hear the appeal. The federal appellate power generally covers only "final decisions of the district courts," 28 U.S.C. § 1291. Therefore, we must determine the validity of the district court's Rule 54(b) order certifying the dismissal of appellants' claims as final. Two questions form that determination: whether the dismissal was eligible for certification as a final judgment under the criteria established by Rule 54(b) and whether the district court adequately weighed the relevant equities when deciding to grant the certification. We review the first question *de novo* and the second question for abuse of discretion. *See Bldg. Indus. Assoc. v. Babbitt*, 161 F.3d 740, 743–44 (D.C. Cir. 1998).

On the first question, GWUH argues the dismissal of appellants' claims cannot be considered final under Rule 54(b) because, prior to dismissal, the district court severed the claims

from those of the Nursing Assistants pursuant to FED. R. CIV. P. 42(b). That rule empowers district courts to order separate trials for different issues or claims but still regard the set of issues or claims as a single case. Therefore, GWUH contends the dismissal of a claim severed—or, perhaps more accurately, separated—pursuant to Rule 42(b) is not a final and appealable judgment of an entire case but rather an interlocutory and non-appealable judgment of a subset of claims. *See, e.g.*, *Gaffney v. Riverboat Servs. of Ind.*, *Inc.*, 451 F.3d 424, 441–42 (7th Cir. 2006).

But Rule 54(b) is not simply a superfluous reaffirmation of the finality constraints of 28 U.S.C. § 1291. Instead, as its text makes clear, Rule 54(b) empowers a court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties" in a multiple claim or multiple party case, even though such judgments are not generally considered final. Therefore, should a claim separated under Rule 42(b) be dismissed and otherwise meet the criteria of Rule 54(b), a court can certify that claim as final and appealable. *Gaffney*, the case on which GWUH relies for its argument, acknowledges as much, stating that a "judgment on a claim tried separately is not an appealable final judgment, *unless certified for immediate appeal under Rule 54*." 451 F.3d at 442 n.18 (quoting 4 MOORE'S FED. PRACTICE § 21.06 (2005)) (emphasis added). Because appellants' claims were separated under Rule 42(b) and because the dismissal of appellants' claims constituted the "adjudicat[ion of] . . . the rights and liabilities of fewer than all the parties" in a multiple party case, FED. R. CIV. P. 54(b), we find the dismissal was eligible for Rule 54(b) certification.[2]

---

[2] The parties in this case fail to recognize the multiple party aspect of Rule 54(b) and discuss the rule as if it only permitted the certification of a dismissed claim in a multiple claim action. This is somewhat understandable, since federal caselaw on this topic mainly concerns single

We note our holding is not premised on the argument appellants advance in support of it. Appellants argue the dismissal was eligible for Rule 54(b) certification because the district court actually severed their claims under FED. R. CIV. P. 21, which authorizes severance of claims into distinct actions. There are two problems with this argument. First, like GWUH's argument, it misunderstands the function of Rule 54(b). Again, the rule only applies to multiple claim and multiple party actions where fewer than all of the claims or parties are adjudicated. If appellants' claims were actually severed under Rule 21 and then dismissed, that would have meant *all* the claims in a *single civil action* were dismissed. A Rule 54(b) certification therefore would have been both inapplicable and unnecessary since the dismissal, standing alone, would have constituted an appealable final judgment. The second problem is appellants clearly did not sever their claims under Rule 21. The plain text of appellants' motion to sever requested action "[p]ursuant to Rule 42(b)," Plaintiffs' Motion to Sever Claims, *Brooks*, No. 01-02361 at 1 (D.D.C.

claims amidst multiple claims. *See, e.g.*, *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980) ("[The judgment] must be 'final' in the sense that it is an ultimate disposition of an individual claim entered in the course of a multiple claims action."); *Bldg. Indus. Assoc.*, 161 F.3d at 744 (same). The tilt of the caselaw is perhaps a residual effect of an older version of Rule 54(b) that only covered multiple claim actions. However, the rule was amended to cover multiple party situations. *See* FED. R. CIV. P. 54(b), 1961 Amendment cmt. ("The danger of hardship through delay of appeal . . . may be at least as serious in multiple-parties situations as in multiple-claims cases . . . [and t]he amendment . . . refer[s] explicitly to parties."); *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 n.3 (1976) ("Rule [54(b)] was amended to insure that orders finally disposing of some but not all of the parties could be appealed pursuant to its provisions."). The motivation behind the amendment was to provide plaintiffs a way to appeal the dismissal of a *defendant* in a multiple defendant action, not necessarily their own dismissal from a multiple plaintiff case. *See* FED. R. CIV. P. 54(b), 1961 Amendment cmt. However, the text of Rule 54(b) does not distinguish between plaintiffs and defendants and, by its terms, the rule applies to all multiple party situations.

Jan. 21, 2009), and the district court granted that motion with no mention of any other rule, *see* Order, *Marable*, No. 01-02361 (D.D.C. Feb. 24, 2009). We see no reason to read that order as anything other than an action under Rule 42(b). We highlight this point now because we return to it in section II.B where we consider whether the district court's dismissal of appellants' claims was proper.

We turn to the next jurisdictional hurdle: did the district court properly weigh the relevant equities when granting the Rule 54(b) certification? The rule does not allow a court to certify any and all eligible claims, but only those for which "the court expressly determines that there is no just reason for delay" of an appeal. FED. R. CIV. P. 54(b). This determination weighs both "justice to the litigants" and "the interest of sound judicial administration." *Curtiss-Wright Corp.*, 446 U.S. at 6, 8. The factors affecting "justice to the parties" will inevitably differ from case to case, but the factors pertaining to judicial administration include "whether the claims under review [are] separable from the others remaining to be adjudicated and whether the nature of the claims already determined [is] such that no appellate court [will] have to decide the same issues more than once even if there [are] subsequent appeals." *Id.* at 8. GWUH does not directly dispute that these factors were correctly weighed on the face of the amended Rule 54(b) order. Instead, it argues the district court abused its discretion in "simply adopt[ing] the proposed order submitted by the appellants without even giving the Hospital a chance to respond." Br. for Appellee at 26. In GWUH's opinion, that adoption was nearly tantamount to the district court offering no reasoning at all.

This argument is unpersuasive. The wholesale adoption of an otherwise valid proposed order is not an abuse of discretion. *Cf. United States v. El Paso Nat. Gas Co.*, 376

U.S. 651, 656 (1964) ("[Proposed] findings, though not the product of the workings of the district judge's mind, are formally his; they are not to be rejected out-of-hand, and they will stand if supported by evidence."). The order the district court adopted, as GWUH concedes, expressly weighed the factors relevant to Rule 54(b). We give the district court's consideration of those factors "substantial deference," *Curtiss-Wright Corp.*, 446 U.S. at 10, and GWUH points to no evidence—and we find none—that disturbs the district court's conclusion.

Because the district court properly certified its dismissal of appellants' claims as final, we find this court has jurisdiction to hear appellants' appeal of that dismissal.

B

Finally, we consider whether the district court properly dismissed appellants' claims. Although the district court's dismissal order contained no explanation, its Rule 54(b) amended order retrospectively explained that it "dismissed the claims of Brooks and Taylor in their entirety for failure to exhaust administrative remedies." Order, *Brooks*, No. 01-02361 at 2 (D.D.C. June 19, 2009). A challenge to a dismissal for lack of administrative exhaustion is a question of law, which this court reviews *de novo*. *See Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 704 (D.C. Cir. 2009). We find that the district court improperly dismissed appellants' claims.

As explained in part I, this court recognizes a "single-filing" exception to Title VII's usual rule that all employment discrimination claims be initially filed with the EEOC. This exception allows non-filing parties to join the lawsuit of a filing party if they possess claims "that are so

similar to those asserted by the original plaintiff[] that no purpose would be served by requiring [them] to file independent . . . charges." *Foster*, 655 F.2d at 1323. Therefore, if the original filing performs the "principal functions of the EEOC filing requirement" of providing the defendant with notice of all charges and offering the EEOC an opportunity to resolve the matter, *id.*, a second filing is not necessary if a similarly situated plaintiff wishes to join the suit.

This case presents such a situation. The EEOC complaint filed by Marable did not challenge GWUH's application process on behalf of external applicants and, in fact, erroneously alleged that external applicants were not required to take the same screening test the Nursing Assistants were. *See* Letter from Solaman Lippman & Renae Marable to EEOC ¶ 9 (Apr. 2, 1999). However, the complaint alleged the screening test was discriminatory against African Americans, the same claim brought by appellants as intervening external applicants. Further, the EEOC's investigation of the complaint was not limited to Nursing Assistants, but extended to the test results and racial data of external applicants. *See* Letter from EEOC to Gregg Avitabile (Oct. 24, 2000). Analysis of that data found the screening test "administered to internal and external applicants . . . did in fact have a disparate impact on Black candidates," though ultimately an impact the EEOC deemed an unlikely statutory violation. Letter from EEOC to Renae Marable (Aug. 10, 2001). These facts indicate that an independent EEOC filing by appellants would have been redundant: GWUH already had received adequate notice of appellants' exact allegation and the EEOC had first crack at resolving that allegation. Appellants, therefore, properly invoked the single-filing exception to join the lawsuit filed by Marable and her co-plaintiffs.[3]

---

[3] We note the district court reached this same conclusion when it granted appellants' motion to intervene in the lawsuit. *See* Mem. Op. & Order,

That determination does not end our inquiry, however. Two issues remain. First, the parties' briefs disputed whether appellants currently are joined to the lawsuit filed by Marable and her Nursing Assistant co-plaintiffs. As discussed in section II.A, *supra*, the parties when arguing the jurisdictional issue differed on which rule of civil procedure appellants invoked to sever their claims from those of the other plaintiffs. If it was Rule 42(b), appellants remain part of the overall Marable case and are properly joined under the single-filing exception. However, if it was Rule 21, appellants' claims would constitute an independent action. Because the single-filing exception does not apply where there is no joinder to the suit brought by the original filer, *Kizas v. Webster*, 707 F.2d 524, 547 (D.C. Cir. 1983), an independent suit brought by appellants would demand dismissal for lack of administrative exhaustion.

Ironically, both sides' briefs take the position when arguing the jurisdictional issue that hurts their case with respect to the dismissal issue. Appellants' brief attempts to overcome that self-imposed hurdle by urging this court to break new ground and apply the single-filing exception in the absence of joinder to a distinct action brought by non-filing plaintiffs. However, appellants backtracked from that entreaty at oral argument and now contend, for purposes of the dismissal issue, that they separated their claims under Rule 42(b) and not Rule 21. We agree.

The next question is whether Marable's EEOC filing can serve as the basis for appellants' claims when Marable has voluntarily dismissed her suit with prejudice. GWUH argues

---

*Marable*, No. 01-02361 at 5–6 (D.D.C. May 29, 2007). Why the district court seemingly reversed that decision when it dismissed appellants' claims is unclear. Because we review the dismissal *de novo*, there is no need to inquire into the exact reason.

that it cannot, pointing out that the single-filing exception does not apply when the original EEOC filer is not party to the suit. GWUH's argument would be persuasive if Marable were the only plaintiff who filed an EEOC complaint. However, this is not the case. Marable's EEOC filing contained an attachment that listed the names and contact information of additional complainants. *See* Letter from Solaman Lippman & Renae Marable to EEOC at ¶ 4 (April 2, 1999) ("Charges are herewith filed . . . on [Marable's] own behalf and on behalf of the attached list of persons who were also employed as Assistant Nurses."). Among those listed were Janette Adams, Kathleen McDonald, and Nancy Prince—the three former Nursing Assistants who remain as plaintiffs in the overall action. Under EEOC's regulations, a "charge on behalf of a person claiming to be aggrieved may be made by any person," as long as "the name, address, and telephone number of the person on whose behalf the charge is made" are provided to the EEOC. 29 C.F.R. § 1601.7(a). Further, the EEOC issues right-to-sue letters to "the person claiming to be aggrieved or the person on whose behalf a charge was filed." *Id.* § 1601.19(a). Therefore, the remaining Nursing Assistants all exhausted their administrative remedies and received the right to sue when they joined Marable's EEOC complaint. As long as one of those plaintiffs remains party to the suit, appellants can continue to avail themselves of the single-filing exception.

Because appellants properly intervened in a lawsuit brought after the original plaintiffs filed EEOC charges and because appellants remain as plaintiffs in that suit, the dismissal of their claims for lack of administrative exhaustion was in error.

III

The district court properly authorized its dismissal of

appellants' claims as final under Rule 54(b), giving this court jurisdiction to hear this appeal. The district court, however, improperly dismissed appellants' claims for lack of administrative exhaustion. For these reasons, we affirm the district court's Rule 54(b) order but reverse its dismissal order and remand for further proceedings.

*So ordered.*