# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 22, 2013          Decided May 21, 2013

No. 11-7131

GREGORY ENGLISH,
APPELLANT

v.

DISTRICT OF COLUMBIA, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-01512)

*Charles A. Patrizia* argued the cause and filed the briefs for appellant.

*Stacy L. Anderson*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellees. With her on the brief were *Irvin B. Nathan*, Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General.

Before: BROWN, *Circuit Judge*, and EDWARDS and SILBERMAN, *Senior Circuit Judges*.

Opinion for the court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: This appeal arises from an action filed by Appellant, Gregory English, against the District of Columbia Department of Mental Health ("DMH"). Appellant has been confined at St. Elizabeths Hospital ("St. Elizabeths" or the "Hospital") since 1982. During his confinement, Appellant has earned money at the Hospital working as part of his treatment program, and his earnings have been deposited in a patient account. In September 2010, Appellant filed suit in District Court, asserting a cause of action under, *inter alia*, 42 U.S.C. § 1983, and alleging that DMH had violated his rights by seizing money from the patient account without affording him procedural due process. DMH responded that the Hospital had lawfully transferred Appellant's money to cover the cost of his care. DMH moved to dismiss the complaint for failure to state a claim, and the District Court granted the motion. We affirm.

It is clear from the record that Appellant received proper notice before his funds were taken. We also find that Appellant's claim that he was denied due process lacks merit because he failed to invoke the remedies available to him under the D.C. Administrative Procedure Act (the "DCAPA"). Appellant was not denied due process; rather, he failed to pursue the process available to him to challenge the Hospital's action.

## I. BACKGROUND

### A. Facts

Appellant was involuntarily committed to St. Elizabeths by court order in 1982 after he was found not guilty of an assault charge by reason of insanity. During his hospitalization, Appellant has participated in an occupational therapy program in which he has earned wages that have been

deposited into a bank account maintained by DMH. By July 2009, Appellant had accumulated $2,250 in his account.

In July 2009, Appellant signed a form entitled "Administrative Consent," pursuant to which he acknowledged that he was "personally responsible to the Hospital and all treating physicians for all charges not paid in full by insurance coverage or in the absence of insurance coverage, the full balance." Administrative Consent (July 14, 2009), *reprinted in* Joint Appendix ("J.A.") 66. Later that month, DMH sent Appellant a bill for $2,150 for services rendered between July 1, 2008 (when his Medicaid insurance lapsed) and January 31, 2009, for 215 days of care at $10 per day. *See* Letter from Jerome Austin, Accountant, St. Elizabeths Hospital, to Gregory English ("Invoice") (July 28, 2009), *reprinted in* J.A. 63; *see also* D.C. CODE § 24-501(f)(1) (requiring hospitals for the mentally ill to charge patients involuntarily committed by reason of insanity for the cost of their support). DMH notified Appellant that it suspended additional charges to ensure that English retained a $100 balance. The Invoice provided Appellant with directions for filing a written dispute. Appellant asserts that, within the prescribed time limits, he sent a letter to the Hospital challenging the bill. The Hospital maintains it never received any such letter from Appellant. In August 2009, DMH removed $2,150 of Appellant's funds from the patient account.

## B. DMH Grievance

In September 2009, Appellant commenced a grievance proceeding pursuant to DMH regulations. *See* D.C. CODE § 7-1231.12(a) (authorizing grievance regulations); D.C. MUN. REGS. tit. 22-A, § 300.1 *et seq.* These regulations establish a multi-tiered, non-exclusive post-deprivation review process. Under applicable local law, an aggrieved party "may pursue other legal, administrative, or informal relief in lieu of or

concurrently with filing a grievance." D.C. MUN. REGS. tit. 22-A, § 304.3; *accord* D.C. CODE § 7-1231.12(c). Appellant initially pursued his grievance before the Chief Administrative Officer of the Hospital. After his grievance was denied, Appellant appealed to an external reviewer, who rendered a non-binding advisory opinion. *See* D.C. MUN. REGS. tit. 22-A, § 308; *accord* D.C. CODE § 7-1231.12(b). In an opinion dated November 27, 2009, the external reviewer found that Appellant's "grievance [had] merit" and recommended judicial review. Advisory Opinion of the External Review for Mr. Gregory English, Fair Case No. 09-STEH-479, 10 (Nov. 27, 2009), *reprinted in* J.A. 89.

DMH regulations require that, within ten days, the Director either ratify or reject the recommendations of the external reviewer in whole or in part. D.C. MUN. REGS. tit. 22-A, § 308.6. The Director failed to meet this regulatory deadline.

### C. District Court Litigation

In September 2010, Appellant still had not received a final decision from the Director of DMH. It was then that Appellant filed suit in the United States District Court for the District of Columbia. Before the District Court, Appellant brought (1) a claim under 42 U.S.C. § 1983 alleging that he had been deprived of property without due process of law in violation of the Fifth and Fourteenth Amendments, (2) seven claims under D.C. law, including one for an alleged violation of the DCAPA, and (3) a claim for declaratory relief against DMH. Compl. ¶¶ 54-116, *reprinted in* J.A. 49-59. In relevant part, Appellant alleged that DMH had deprived him of his money, in which he had a property interest, without affording him adequate notice or an adequate opportunity to respond. He further alleged that he had "no available administrative remedies" because the Director of DMH had not yet

responded to the external reviewer's Advisory Opinion. Compl. ¶ 50, *reprinted in* J.A. 48.

DMH moved to dismiss the constitutional claims on the grounds that, *inter alia*, Appellant's proper avenue of relief was review by the District of Columbia Court of Appeals pursuant to the DCAPA. *See* Defs.' Reply to Pl.'s Opp'n to the Defs.' Mot. to Dismiss 10, *reprinted in* J.A. 193. On September 30, 2011, the District Court granted Appellees' motion to dismiss, declined to take jurisdiction over Appellant's supplemental local law claims, and declined to issue a declaratory judgment in Appellant's favor. *See English v. District of Columbia*, 815 F. Supp. 2d 254 (D.D.C. 2011). This appeal followed.

### D. D.C. Court of Appeals Decision

In September 2010, while this case was pending before the District Court, DMH issued its decision denying Appellant's grievance. *See* Director's Decision, No. 09-STEH-479 (Sept. 23, 2010), *reprinted in* J.A. 103-05. On the assumption that the Director's decision was final and appealable, Appellant filed a Petition for Review of DMH's decision with the D.C. Court of Appeals.

On January 26, 2012, the D.C. Court of Appeals dismissed Appellant's Petition for Review for lack of jurisdiction because there had not yet been a contested case proceeding as required by D.C. Code §§ 2-509 & 510. Order, *English v. District of Columbia*, No. 11-AA-1377 (D.C. Jan. 26, 2012). The court noted that its "dismissal [was] without prejudice to seeking review upon entry of a final order by the Office of Administrative Hearings." *Id.*

## II. ANALYSIS

### A. Standard of Review

"We review a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) *de novo.*" *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Id.* We may consider attachments to the complaint as well as the allegations contained in the complaint itself. *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

We review the District Court's decision not to exercise supplemental jurisdiction for abuse of discretion. *Diven v. Amalgamated Transit Union Int'l & Local 689*, 38 F.3d 598, 601 (D.C. Cir. 1994).

### B. Appellant's Contentions Regarding the Requirements of Due Process

A procedural due process violation under the Fifth Amendment occurs when a government official deprives a person of his property without appropriate procedural protections. *See Atherton*, 567 F.3d at 689. The procedural due process protections under the Fifth and Fourteenth Amendments are the same; however, only the Fifth Amendment applies to the District of Columbia. *Propert v. District of Columbia*, 948 F.2d 1327, 1330 n.5 (D.C. Cir. 1991). Beyond the basic requirements of notice and an opportunity to be heard, the precise requirements of procedural due process are flexible. *See, e.g.*, *id.* at 1332.

Appellant advances two principal claims. He first contends that the Hospital did not provide him with sufficient notice before removing funds from his patient account. Compl. ¶ 57, *reprinted in* J.A. 49. He also contends that the

process that he received did not satisfy the requirements of the Fifth Amendment. The parties sharply disagree over whether the DMH external review procedure afforded Appellant procedural protections sufficient to satisfy the commands of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (explaining that, in assessing the requirements of procedural due process in any case, a court must weigh (1) the importance of the private interest at stake, (2) the risk of an erroneous deprivation of the interest because of the procedures used and the probable value of additional procedural safeguards, and (3) the government's interests, including the cost of additional procedures). Appellant has conceded, however, that a contested case proceeding under the DCAPA would have provided him with procedural protections sufficient to satisfy the requirements of the Fifth Amendment. Oral Arg. at 5:13-5:25; 10:58-11:16. Given this concession, the principal issue regarding the procedural protections afforded Appellant is whether he knew or reasonably should have known that a contested case proceeding under the DCAPA was available to him to challenge the disputed action taken by DMH.

We now turn to the issues of notice and the sufficiency of the review process available pursuant to the DCAPA.

## C. Sufficiency of Notice

Appellant asserts that he never received notice that the Hospital intended to remove money from his patient account and that he never consented to the withdrawal of his funds. The record does not support these contentions. By law, the Hospital was obliged to charge Appellant for the cost of his care, and Appellant had notice of the law. On July 14, 2009, Appellant signed a form acknowledging that he was "personally responsible to the Hospital and all treating physicians for all charges not paid in full by insurance coverage or in the absence of insurance coverage, the full balance." *See* Administrative Consent (July 14, 2009),

*reprinted in* J.A. at 66. On July 28, 2009, DMH provided Appellant with an invoice for services rendered between July 1, 2008, and January 31, 2009, and not covered by any insurance. Invoice, *reprinted in* J.A. 63. The bill made it clear that if no payment was received within seven days, the Hospital reserved the right to transfer Appellant's funds from the patient account to cover the amount due. In light of these undisputed facts, Appellant clearly had notice that, pursuant to the consent that he signed, he would be charged for his hospital care not paid for in full by insurance. He was entitled to nothing more.

Notice under the Due Process Clause need only be "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The consent form that Appellant signed and the subsequent invoice from the Hospital easily satisfied this standard. Appellant suggests that notice was deficient because the Hospital never responded to his written challenge to the invoice. *See* Compl. ¶ 33, *reprinted in* J.A. 44 (alleging that Appellant attempted to challenge the Invoice). However, Appellant's alleged inability to contest the bill concerns the adequacy of the process afforded him, not the absence of notice. Indeed, Appellant could not have contested the Invoice without first having received notice from the Hospital.

**D.  Sufficiency of the Review Process Available Pursuant to the DCAPA**

Under applicable District of Columbia law, administrative decisions are subject to direct review in the D.C. Court of Appeals only if they arise out of "contested cases." D.C. CODE § 2-510(a) ("Any person suffering a legal wrong, or adversely affected or aggrieved by an order or decision of the Mayor or an agency in a contested case, is

entitled to a judicial review thereof in accordance with this subchapter upon filing in the District of Columbia Court of Appeals . . . ."); *see* D.C. CODE § 2-502(8) (defining "contested case"). Under governing DMH regulations, "[a]ny party to a [DMH] grievance dissatisfied with the grievance's final determination by DMH may request a fair hearing, pursuant to the [DCAPA]." D.C. MUN. REGS. tit. 22-A, § 308.9. A fair hearing "shall meet the requirements of a contested case proceeding." D.C. CODE § 7-1231.12(b)(4).

Shortly after Appellant filed his suit in District Court, the DMH Director issued a decision rejecting Appellant's grievance. Appellant did not then seek a contested-case fair hearing as contemplated by DMH regulations. *See* D.C. MUN. REGS. tit. 22-A, § 308.9. To initiate a contested case proceeding, Appellant should have followed the procedures outlined in the D.C. Office of Administrative Hearings regulation, specifically the regulation governing "Beginning a Case by Requesting a Hearing." *See* D.C. MUN. REGS. tit. 1, § 2808. This regulation requires an exceptionally brief filing – far less comprehensive than Appellant's Complaint – including, *inter alia*, "[a] short description of your dispute," "[a] description of what you want the judge to do," and attaching "[a] copy of any ruling or decision that you are disputing or appealing." *Id.* § 2808.2(a), (b), & (d). Once this *pro forma* paperwork was on file, the Office of Administrative Hearings would have alerted DMH to the pending action and would have overseen a hearing in compliance with the DCAPA's contested case fair hearing requirements. *See* D.C. MUN. REGS. tit. 22-A, § 308.9.

On October 31, 2011, instead of initiating a contested case proceeding, Appellant petitioned the D.C. Court of Appeals for review of the Director's Decision. The D.C. Court of Appeals dismissed Appellant's petition for review for want of jurisdiction, finding that "there [had] not yet been

a contested case proceeding." Order, *English v. District of Columbia*, No. 11-AA-1377 (D.C. Jan. 26, 2012). The court did not foreclose the possibility of review. It simply confirmed that it could not take review until Appellant had properly pursued a contested case. *Id.*; *see also Capitol Hill Restoration Soc'y, Inc. v. Moore*, 410 A.2d 184, 186-88 (D.C. 1979) (dismissing for want of a contested case and discussing contested case requirements).

As noted above, Appellant has conceded that a contested case proceeding under the DCAPA would have provided him with procedural protections sufficient to satisfy the requirements of the Fifth Amendment. He argues, however, that it was not clear to him what the DCAPA offered and required. This argument is meritless, as Appellant was represented by counsel for the duration of his grievance proceeding and appeal. All of the applicable requirements regarding the DCAPA are published in local statutes and regulations that are readily available to counsel and to the general public. *See, e.g.*, *Krentz v. Robertson Fire Prot. Dist.*, 228 F.3d 897, 904-05 (8th Cir. 2000) (holding that appellant "could have . . . ascertained the applicability of the [state APA's] contested case provisions from a reading of the statutes and pertinent cases"). Therefore, Appellant had reason to know that he could not seek review before the D.C. Court of Appeals without first pursing a contested case proceeding.

Appellant further claims that he was misled when DMH "expressly told the district court" that the Director's decision was a "final decision" and thus "appealable" to the D.C. Court of Appeals. Reply Br. for Appellant at 10. During oral argument before this court, counsel for the District of Columbia acknowledged the possibility that Appellant might have been "lulled" into this perception by DMH's representations before the District Court. *See* Oral Arg. at

24:45-25:00. It is unfortunate if Appellant was misled by DMH's representations that the Director's decision was final and appealable. However, the disposition of this case cannot turn on this consideration. Appellant was clearly notified by the D.C. Court of Appeals of the availability and necessity of a contested case proceeding as a prerequisite to review by that court. Order, *English v. District of Columbia*, No. 11-AA-1377 (D.C. Jan. 26, 2012). Yet, even with this notice, Appellant still failed to initiate a contested case proceeding.

Appellant argues in vain that because "the regulations do not provide for a procedure to request such a 'fair hearing' or to otherwise continue proceedings beyond the review process already utilized," he was unable to avail himself of the DCAPA procedures. Br. for Appellant at 23. This is simply not true. As noted above, all of the applicable procedures are published and readily available to counsel and the general public. *See* D.C. MUN. REGS. tit. 1, § 2808. Appellant's failure to initiate the required proceeding is his alone.

Finally, DMH points out that Appellant might have had two other viable options to pursue his case. First, rather than filing a grievance, Appellant might have been able to file an immediate petition for review in the Superior Court to challenge DMH's decision to take his funds, followed by an appeal to the D.C. Court of Appeals. *See, e.g.*, *Capitol Hill Restoration*, 410 A.2d at 186-88. Second, Appellant might have been able to petition the Superior Court for a writ of mandamus when the DMH Director failed to issue a timely decision on his grievance. *See, e.g.*, *Harris v. D.C. Comm'n on Human Rights*, 562 A.2d 625, 633 (D.C. 1989); *Dankman v. D.C. Bd. of Elections & Ethics*, 443 A.2d 507, 510 n.5 (D.C. 1981). We need not decide whether these were indeed viable alternatives for Appellant because he was clearly notified by the D.C. Court of Appeals of the availability and necessity of a contested case proceeding as a prerequisite to

review by that court. He was not denied procedural due process. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437 (1982) (noting that "the State certainly accords due process when it terminates a claim for failure to comply with a reasonable procedural or evidentiary rule").

Because we find that the District Court properly dismissed Appellant's complaint, we also find that the District Court did not abuse its discretion in declining to exercise supplemental jurisdiction over Appellant's local law claims. *See Diven*, 38 F.3d at 601.

### III. Conclusion

For the reasons discussed above, we affirm the judgment of the District Court.