# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued May 4, 2017            Decided August 11, 2017

No. 16-5063

JAMES CRAWFORD,
APPELLANT

v.

ELAINE C. DUKE, ACTING SECRETARY, DEPARTMENT OF
HOMELAND SECURITY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-00436)

*Morris E. Fischer* argued the cause and filed the brief for appellant.

*Benton G. Peterson*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Channing D. Phillips*, United States Attorney at the time the brief was filed, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: ROGERS, MILLETT, and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*: James Crawford, an African-American employed by the Department of Homeland Security, filed suit alleging race discrimination, retaliation, and a hostile work environment. The district court dismissed his case for failure to exhaust his administrative remedies. Because attachments to Crawford's administrative complaint adequately identified his claims alleging a discriminatory performance review and a later suspension, we hold that those two claims were exhausted and reverse in part.

## I

### A

Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., the federal government is prohibited from discriminating in employment on the basis of race, color, religion, sex, or national origin, *id*. § 2000e-16(a).

Before a federal employee can file suit against a federal agency for violation of Title VII, the employee must run a gauntlet of agency procedures and deadlines to administratively exhaust his or her claims. *See Niskey v. Kelly*, 859 F.3d 1, 5–6 (D.C. Cir. 2017) (describing the administrative process). As relevant here, an employee first must contact the agency's Equal Employment Opportunity ("EEO") Counselor within 45 days of an alleged discriminatory action. 29 C.F.R. § 1614.105(a). The Counselor is required to inform the aggrieved employee at an initial counseling session of her or his rights and responsibilities with respect to the claim(s). *Id.* § 1614.105(b). The Counselor will then attempt to resolve the claim(s).

If that informal counseling process does not satisfactorily resolve the employee's concern, the Counselor must, within 30

days of the employee's initial EEO contact, provide written notification of the employee's right to file an administrative discrimination complaint with the agency. 29 C.F.R. § 1614.105(d). The employee then has 15 days to file a formal complaint with the agency. *Id.* § 1614.106(b). That complaint must "describe generally the action(s) or practice(s) that form the basis of the complaint." *Id.* § 1614.106(c).

The agency is required to acknowledge receipt of a formal complaint in writing. 29 C.F.R. § 1614.106(e). Additionally, the agency must advise the EEO Counselor that a complaint has been filed, and the Counselor must provide a report to the agency and the employee within fifteen days. *Id.* § 1614.105(c). "Within a reasonable time after receipt" of the Counselor's report, the agency should send a second letter (commonly referred to as an "acceptance" letter) that "stat[es] the claim(s) asserted and to be investigated." UNITED STATES EQUAL EMP. OPPORTUNITY COMM'N, EEO-MD-110, EQUAL EMP. OPPORTUNITY MGMT. DIRECTIVE FOR 29 C.F.R. PART 1614, at 5-1 (Rev. Aug. 5, 2015) ("EEOC Management Directive"). If the agency's list of asserted claims differs from the employee's, the letter must "explain the reasons for the difference, including whether the agency is dismissing a portion of the complaint." *Id.*

The agency is then required to "conduct an impartial and appropriate investigation of the complaint within 180 days" of the complaint's filing. 29 C.F.R. § 1614.106(e)(2). The agency may dismiss any complaint that has not complied with the timing requirements for initially contacting a Counselor or for filing a formal EEO complaint. *Id.* § 1614.107(a)(2).

After those internal processes have been completed, an aggrieved party may bring a civil suit within 90 days of receipt of the agency's final action, or after 180 days of filing the initial

complaint if the agency has not timely issued a decision. 42 U.S.C. § 2000e-16(c). Alternatively, upon receipt of the final decision of the agency, an employee may choose instead to appeal the agency's decision to the EEOC for review before proceeding to court. 29 C.F.R. § 1614.401(a).

**B**

In 2011, James Crawford was employed by the Department of Homeland Security as a Special Security Officer in the Special Security Programs Division. On a previous performance review, Crawford had received the maximum score of "five." However, on October 21, 2011, a new supervisor, into whose section Crawford had been moved, gave him a "zero" on his annual performance review. He received that score even though he received a 1.92 rating on "Performance Goals" and a 0.689 rating on "Competencies." On October 25, 2011, Crawford contacted the Department's EEO Counselor alleging race discrimination in the review process. A few weeks later, on November 15, 2011, Crawford was notified of a proposed five-day suspension.

Informal efforts to resolve his claims proved unsuccessful and, on February 7, 2012, Crawford, proceeding *pro se*, filed a formal EEO complaint with the Department. He alleged that he had been subjected to discrimination and a hostile work environment because of his race, and retaliation for asserting his EEO rights. In filing his complaint, Crawford used the formal complaint form provided by the Department. That form requests specific information from the employee, including details about the alleged discriminatory actions. The form further advises that claimants "may, but are not required to, attach extra sheets." J.A. 25.

Consistent with the directions, Crawford attached a three-page document to his formal complaint form that detailed several instances of allegedly discriminatory incidents at work occurring in 2010 and 2011. Along with that statement, Crawford attached copies of three additional documents: his October 21st performance review with a rating of "zero," a November 15th notice of proposed suspension, and a December 9th memorandum finalizing and effectuating his five-day suspension.

On June 26, 2012, Oscar Toledo, the Acting Formal Complaints Manager in the Department's EEO office, emailed Crawford regarding his complaint. Toledo's email included a list of eight allegedly discriminatory incidents and requested further information from Crawford about them. The email concluded that the complaint as written was "not sufficiently precise to properly determine [the] claims of discrimination[,]" and it advised Crawford that a failure to submit the requested information could lead to dismissal of his complaint. J.A. 62. The email failed to address the performance review and suspension, and it did not state that the list of eight incidents was a final, binding list of matters to be investigated.

Crawford responded to the email on July 11, 2012, providing additional factual information about all eight incidents and several relevant dates. He also advised Toledo that he was "working on additional information * * * to add [to] and clarify [his] complaint." J.A. 61. Toledo claims that he never received any further information from Crawford.

The Department dismissed Crawford's complaint on August 7, 2012, for a purported failure to contact an EEO Counselor within 45 days of the alleged discriminatory events. Crawford took the optional step of appealing that decision to

the EEOC. The EEOC affirmed the dismissal on December 13, 2013.

## C

Three months later, Crawford filed a *pro se* complaint in the United States District Court for the District of Columbia alleging race discrimination, retaliation, and a hostile work environment in his employment by the Department. Crawford's complaint asserted the following racially discriminatory actions: his October 2011 annual performance rating of "zero," his five-day suspension finalized in December 2011, and his denial of promotion in November 2011. The complaint also raised the eight incidents identified in Toledo's email.

On the Department's motion, the district court first dismissed under Federal Rule of Civil Procedure 12(b)(6) the eight claims identified in Toledo's email for failure to exhaust administrative remedies. *See Crawford v. Johnson*, No. 14-cv-00436-KBJ (D.D.C. Feb. 9, 2015), J.A. 41–42. Crawford does not challenge the dismissal of those claims here.

With respect to the performance review, suspension, and failure-to-promote claims, the district court then granted the Department summary judgment, also on failure-to-exhaust grounds. *Crawford v. Johnson*, 166 F. Supp. 3d 1, 4 (D.D.C. 2016). The district court reasoned that Crawford "did not specifically reference" those three instances "in the body of his formal EEO complaint," *id* at 9, nor did he "reference or specifically incorporate those exhibits into the body of his EEO complaint," *id.* at 10. The district court ruled that "information revealed only in exhibits attached to an EEO complaint" is not considered "incorporated into the final complaint" for purposes of the exhaustion requirement. *Id.* at 9.

Crawford appeals the grant of summary judgment to the Department on those three claims.

**II**

We review the district court's grant of summary judgment *de novo*, taking all of the complaint's allegations and any reasonable inferences they support in the light most favorable to the plaintiff. *Al–Saffy v. Vilsack*, 827 F.3d 85, 89, 92 (D.C. Cir. 2016). We can affirm only if the district court committed no material error of law and there are no genuinely disputed issues of material fact. *Id.* at 92.

**A**

The district court's starting premise—that information contained in attachments to a formal EEO complaint cannot support exhaustion—was incorrect. *See Crawford*, 166 F. Supp. 3d at 9. Attachments to a formal EEO complaint are an integral part of the complaint and can independently identify claims for resolution regardless of whether the attachment is also referenced in the body of the complaint itself.

Indeed, the official EEO complaint form used by the Department is explicit that employees "may * * * attach extra sheets" to identify and explicate the claims asserted in "[d]escrib[ing] the action taken against [them] that [they] believe was discriminatory[.]" J.A. 25. To hold, then, that attachments do not suffice to present a claim would pull the rug out from under claimants.

Our case law and that of our sister circuits have treated attachments to an EEO complaint as part of the complaint itself and a basis for articulating claims. *See Brooks v. District Hosp.*

*Partners*, 606 F.3d 800, 808 (D.C. Cir. 2010) (individuals included in a list attached to a complaint were included within the complainant's reference to similarly situated individuals); *accord Asebedo v. Kansas State Univ.*, 559 F. App'x 668, 672 (10th Cir. 2014) (holding plaintiff exhausted discrimination claim because he had raised it in an attached narrative); *Agolli v. Office Depot, Inc.*, 548 F. App'x 871, 876 (4th Cir. 2013) (holding plaintiff exhausted administrative remedies based on additional sheets attached to EEO complaint); *Fantini v. Salem State Coll.*, 557 F.3d 22, 27 (1st Cir. 2009) (holding plaintiff had exhausted sex discrimination claim because, *inter alia*, she had identified an instance of disparate treatment in an attachment to her EEO complaint); *Dixon v. Ashcroft*, 392 F.3d 212, 217–218 (6th Cir. 2004) (holding plaintiff had exhausted claim because his attachment to his EEO complaint set forth sufficient factual details); *cf. Federal Express Corp. v. Holowecki*, 552 U.S. 389, 405–406 (2008) (holding that plaintiff's filing with the EEOC constituted a formal charge because the plaintiff attached a statement to the filed intake questionnaire that included a request for the agency to act).

That approach is consistent with how attachments to complaints are treated even in the more formal setting of federal court proceedings. We generally "permit[] courts to consider supplemental material filed by a pro se litigant in order to clarify the precise claims being urged" in her complaint. *Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007). Indeed, the ordinary practice when considering whether a complaint adequately states a claim is to "consider attachments to the complaint as well as the allegations contained in the complaint itself." *English v. District of Columbia*, 717 F.3d 968, 971 (D.C. Cir. 2013); *see also Atherton v. District of Columbia Office of Mayor*, 567 F.3d 672, 677 (D.C. Cir. 2009) (drawing on the complaint and "additional materials submitted by [the plaintiff], including

affidavits and exhibits incorporated therein," in resolving a motion to dismiss); *Stewart v. National Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) ("In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice."). After all, the Federal Rules of Civil Procedure themselves provide that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." FED. R. CIV. P. 10(c); *see also Davoodi v. Austin Indep. School Dist.*, 755 F.3d 307, 310 (5th Cir. 2014) (copy of EEO complaint attached to the district court complaint "became a part of [plaintiff's] complaint for all purposes").

That rule makes even more sense when applied to an informal process of administrative resolution in which many claimants proceed *pro se*. *See, e.g.*, *Shehadeh v. Chesapeake & Potomac Tel. Co. of Md.*, 595 F.2d 711, 727 (D.C. Cir. 1978) ("[C]omplaints to the [EEO] Commission are to be construed liberally since very commonly they are framed by persons unschooled in technical pleading."). During the non-adversarial EEO process, "the purposes of counseling and mediation are not to compile a record for judicial review but instead simply to afford the employee and the employing office an opportunity to explore and possibly resolve the employee's claims informally." *Artis v. Bernanke*, 630 F.3d 1031, 1035 (D.C. Cir. 2011) (quoting *Blackmon-Malloy v. United States Capitol Police Bd.*, 575 F.3d 669, 711–712 (D.C. Cir. 2009)); *see* EEOC Management Directive, *supra*, at 6-IV (administrative process is non-adversarial).

The Department also faults Crawford for failing to flag the three claims at issue here in his response to Toledo's email. But the Department's email did not provide Crawford fair notice that only the eight incidents would be investigated, nor

did it otherwise make clear that Crawford had to speak now or forever forfeit other claims included within his filed complaint. Nor did the Department follow the regulatory procedures for dismissing any of the claims initially raised in the complaint. *See* 29 C.F.R. § 1614.107. Without providing plain notice and following the required procedures, the Department cannot shift the burden to the complainant to assert again claims his complaint has already laid before the agency.

Finally, the Department's reliance on *Hamilton v. Geithner*, 666 F.3d 1344 (D.C. Cir. 2012), and *Park v. Howard University*, 71 F.3d 904 (D.C. Cir. 1995), is misplaced. Both of those cases involved documents that were filed prior to and separate from the formal complaint. *See Hamilton*, 666 F.3d at 1350 (claim mentioned only during the informal complaint process); *Park*, 71 F.3d at 908–909 (no evidence that the relevant document was provided to the agency).

**B**

When the complaint and attachments are read as a whole, they show that Crawford adequately exhausted his claims of racial discrimination, retaliation, and a hostile work environment arising out of the October 2011 performance evaluation and the December 2011 five-day suspension. He did not, however, properly exhaust his claimed denial of a promotion.

The Department does not dispute that Crawford timely made an initial contact with an EEO Counselor or that he timely filed his formal EEO complaint. The only remaining question is whether the complaint encompassed the three claims that Crawford raises here. "Naturally every detail of the eventual complaint need not be presaged in the EEO[] filing." *Marshall v. Federal Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir.

1997). Rather, the central question is whether the employee's complaint contained "sufficient information" to put the agency on notice of the claim and to "enable the agency to investigate" it. *Artis*, 630 F.3d at 1034 (citations omitted); *see Brown v. Marsh*, 777 F.2d 8, 16 (D.C. Cir. 1985) (plaintiff exhausted claim because the agency had "sufficient notice" of the plaintiff's allegation of "a continuing pattern of discriminatory nonpromotion").[1]

### 1. October 2011 Performance Review

Crawford exhausted his claim that his adverse performance rating in October 2011 was the product of racial discrimination and a racially hostile work atmosphere. He attached a copy of the performance review to his complaint, which put the Department on notice that it was of concern and merited scrutiny. In addition, Crawford's enclosed three-page summary of events casting relevant light on his claims of racial discrimination expressly mentioned that (i) his supervisors were "setting [him up] to fail," J.A. 28, (ii) the set-up included the performance-review process in that one of those same supervisors had made false statements during his previous performance review, and (iii) all of his supervisors denied him the support needed to perform his job successfully.

---

[1] *See also Wilson v. Peña*, 79 F.3d 154, 164 (D.C. Cir. 1996) (suit will be "barred for failure to exhaust administrative remedies" when the plaintiff "fail[s] to provide sufficient information to enable the agency to investigate the claim"); *accord, e.g.*, *Khader v. Aspin*, 1 F.3d 968, 971 (10th Cir. 1993) ("[W]hen a complainant refuses or fails to provide the agency information sufficient to evaluate the merits of the claim, he or she 'cannot be deemed to have exhausted administrative remedies.'") (citation omitted); *cf. Shehadeh*, 595 F.2d at 728–729 (finding exhaustion requirement met because the information in the EEOC complaint "afforded the Commission ample opportunity to investigate the violations" alleged).

On top of that, the content of the performance review itself raises questions of material fact. Although his prior review had given him a perfect "five" rating, this time Crawford was given the shockingly low score of "zero" for his work performance, and he received a zero even though the components of that rating included a weighted score of 1.92 in the "Performance Goals" section and 0.689 in the "Competencies" section. At oral argument, counsel for the Department was unable to explain how the total score ended up as a "zero." *See* Oral Arg. at 45:37–46:05.[2]

Together, Crawford's enclosure of the performance review, his reference to performance reviews as part of a targeted effort to make him fail, and the facial oddity of Crawford's "zero" performance rating provided sufficient information for the agency to investigate Crawford's claim that the performance review is part of the racial discrimination he alleges he suffered.

### 2. December 2011 Suspension

Crawford also adequately exhausted his claim that his five-day suspension in December of 2011 was the product of racial discrimination and a hostile work environment. To begin with, Crawford attached to his complaint both the memorandum proposing his suspension and the memorandum finalizing and implementing it—again evidencing that they

---

[2] The Department stated at oral argument that this performance review has now been withdrawn. Oral Arg. at 45:41–50 (Department counsel: "That particular performance evaluation has been rescinded and taken out of his performance file because of errors."). The evidentiary relevance of that mathematically crabbed original evaluation nonetheless remains relevant to Crawford's discrimination claim.

should be probed by investigators as part of his Title VII claims.

In addition, the memorandum implementing the suspension expressly referenced Crawford's allegations of a hostile work environment and racial discrimination, and quoted Crawford's claim that the events underlying the suspension were "a continuation of the hostile environment [he had] been receiving[.]" J.A. 37. The Department's memorandum further conveyed Crawford's statements about "harassment, bullying, false [allegations] made by [his] supervisors and the attempt to set [him] up to fail by [his supervisor] by assigning [him] to support [the Science and Technology division] without any additional staff members to assist [him]." J.A. 38. The author of the memorandum expressly recognized Crawford's claim that the suspension was part of his "being subjected to working in a hostile working environment." J.A. 38.

The memoranda thus put the Department on adequate notice that Crawford viewed the suspension as both driven by racial discrimination itself and as an aspect of a hostile work environment claim.

### 3. November 2011 Denial of Promotion

Crawford, however, failed to properly exhaust his claim that he was discriminatorily denied a promotion in November 2011 in favor of another candidate. Crawford included no documentation with his complaint that pertained to this claim. Nor does his complaint or his three-page summary of relevant events mention the hiring of another individual for a position to which Crawford had sought advancement. The closest Crawford comes is a vague allegation about a supervisor interfering in his application for an unidentified promotion. But Crawford acknowledged that his application was

ultimately submitted by another supervisor. And he nowhere alleges anything about the ultimate outcome of that promotion application or any other sought-after advancement. For that reason, his fleeting and skeletal reference to temporary interference with the promotion process could not reasonably be expected to alert the Department to investigate the claim that Crawford was denied an unidentified promotion in favor of another unidentified individual.

* * *

We hold that Crawford adequately exhausted his administrative remedies with respect to the October 2011 performance review and the December 2011 suspension, but not as to the November 2011 denial of promotion. Accordingly, the judgment of the district court is affirmed in part and reversed in part.

*So ordered.*